No. 98,948

STATE OF KANSAS, *Appellee*, v. MARSHA INEZ PRESTON, *Appellant*.

(195 P.3d 240)

Opinion filed November 7, 2008.

*Jennifer C. Roth*, assistant district defender, of Third Judicial District Public Defender Office, argued the cause and was on the brief for the appellant.

*Jamie L. Karasek*, assistant district attorney, argued the cause, and *Robert D. Hecht*, district attorney, and *Stephen N. Six*, attorney general, were with her on the brief for the appellee.

The opinion of the court was delivered by

JOHNSON, J.: Marsha Inez Preston appeals the district court's ruling that the amount of time she participated in an inpatient drug treatment program while on probation would not be credited as service on her underlying prison sentence. Acknowledging that K.S.A. 21-4603d(n) specifically precludes jail time credit for participation in the certified drug abuse treatment program mandated by K.S.A. 21-4729, Preston argues that (1) K.S.A. 21-4603d(n) should be construed as not conflicting with the jail time credit provisions of K.S.A. 21-4614a, as interpreted in *State v. Theis*, 262

Kan. 4, 10, 936 P.2d 710 (1997); (2) her inpatient treatment was not a part of the mandatory drug treatment program; or (3) K.S.A. 21-4603d(n)'s preclusion of jail time credit violates the equal protection guaranties of the Fourteenth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, § 1. We affirm.

Preston pled nolo contendere to possession or control of cocaine in violation of K.S.A. 2007 Supp. 65-4160(a), a drug severity level 4 felony. Preston was sentenced on May 5, 2006, to an underlying prison term of 17 months. However, in accordance with the legislative scheme known as Senate Bill 123 (S.B. 123), L. 2003, ch. 135, she was placed on community corrections probation for 18 months to complete a certified drug abuse treatment program. See K.S.A. 21-4729.

Preston failed to report to her intensive supervisor to commence probation supervision, and on June 14, 2006, the probation officer filed a motion for an order to show cause why probation should not be revoked for the failure to report. The motion requested that Preston be ordered to serve 60 days in jail, followed by inpatient treatment, and an order to comply with aftercare requirements. A show cause hearing was held on October 12, 2006. Preston stipulated that she failed to report, and the court revoked her probation. Preston was reinstated on community corrections supervision with the additional conditions of following the aftercare recommendations of the inpatient treatment facility, Valeo, and serving a 60-day jail sanction. The order of probation reinstatement read in relevant part: "[Y]ou have been placed on Community Corrections Probation on this date, October 12, 2006, for a period of 18 months per SB 123 for the offense of Drugs; Opiates or Narcotics; Possession; First Offense."

On January 8, 2007, the probation officer filed a second motion for an order to show cause, alleging that Preston failed to report for supervision and had not complied with the aftercare treatment recommendation that she attend the First Step Halfway House. At the March 26, 2007, show cause hearing, Preston stipulated to the failure to report and the failure to comply with her treatment program. Her attorney acknowledged that Preston was a "Senate Bill

123 Person," and advised the court that Preston had recommenced her drug use after being discharged from inpatient treatment and while waiting for space to open at the First Step House. The district court revoked Preston's probation and ordered her to serve her underlying prison term.

On April 2, 2007, Preston filed an objection to the proposed journal entry of sentencing because it did not include jail time credit for her inpatient treatment time at Valeo. The district court considered the objection as a motion for jail credit. The court refused to grant credit "for the approximately 44 days [Preston] was in inpatient treatment at Valeo as a condition of her SB 123 probation." Following Preston's timely appeal, the case was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

## STANDARD OF REVIEW

Preston's first two issues require us to interpret statutory provisions, invoking an unlimited review. In that regard, we are not bound by the trial court's statutory interpretation. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). Likewise, as a question of law, we exercise an unlimited review of Preston's equal protection challenge. See *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007).

## CONFLICT IN STATUTES

First, Preston complains about the State's argument before the district court that K.S.A. 21-4603d(n) and K.S.A. 21-4614a were in conflict. The point of the State's argument was that K.S.A. 21-4603d(n), as the specific provision, governed over the general provisions of K.S.A. 21-4614a and likewise trumped the holding in *Theis* which found that credit should be given for time spent in an inpatient drug treatment program.

K.S.A. 21-4603d(n), in relevant part, provides:

"If the defendant fails to participate in or has a pattern of intentional conduct that demonstrates the offender's refusal to comply with or participate in the treatment program, as established by judicial finding, the defendant shall be subject to revocation of probation and the defendant shall serve the underlying prison sentence as established in K.S.A. 21-4705, and amendments thereto. For those offenders who are convicted on or after the effective date of this act, upon completion of

the underlying prison sentence, the defendant shall not be subject to a period of postrelease supervision. *The amount of time spent participating in such program shall not be credited as service on the underlying prison sentence.*" (Emphasis added.)

In contrast, K.S.A. 21-4614a(a) provides that when a defendant's probation is revoked and the defendant is sentenced to confinement, the sentencing date "shall be computed as an allowance for the time which the defendant has spent in a residential facility while on probation, assignment to a conservation camp or assignment to community correctional residential services program." In *Theis*, 262 Kan. at 10, this court reasoned "that K.S.A. 21-4614a(a) should be liberally construed to give offenders . . . jail time credit for time spent in inpatient drug treatment while on probation, thus reserving jail space for more violent offenders."

Preston contends that when the legislature enacted S.B. 123, it was aware of the provisions of K.S.A. 21-4614a but did not choose to amend that statute to preclude credit for inpatient treatment. Further, Preston asserts that it was well established and the legislature would have known that a defendant did not receive jail time credit for time spent on probation or in outpatient treatment programs. Therefore, Preston suggests that such knowledge somehow indicates a legislative intent to simply clarify that a S.B. 123 probationer does not get credit for that portion of the mandatory drug treatment program which is outpatient, but does continue to get credit for the inpatient portion of the program. That argument is counterintuitive and contrary to our rules of statutory construction.

If the legislature had intended for S.B. 123 probationers to receive the same jail time credit treatment that regular probationers were then already receiving, there was no reason for the legislature to even mention jail time credit in K.S.A. 21-4603d(n). Moreover, when the legislature revises an existing law, we presume that it intended to change the law as it existed prior to the amendment. See *State v. McElroy*, 281 Kan. 256, 263, 130 P.3d 100 (2006). Furthermore, the provisions of K.S.A. 21-4603d(n) specifically apply to S.B. 123 probationers who refuse to comply with or participate in their mandatory drug treatment program, *i.e.*, the provision addresses a specific violation by a subset of all probationers. Thus,

the legislature needed to retain the provisions of K.S.A. 21-4614a to apply in those probation violation cases not covered by the specific provisions of K.S.A. 21-4603d(n). Therefore, we reject Preston's suggestion that K.S.A. 21-4603d(n) merely clarified the existing law governing jail time credit.

## INPATIENT TREATMENT REQUIREMENT

In the alternative, Preston argues that, if K.S.A. 21-4603d(n) is not construed to allow jail time credit for inpatient treatment which is a component of a S.B. 123 probation, then her specific inpatient treatment is nevertheless subject to credit because it was not part of her K.S.A. 21-4729 mandatory drug treatment program, *i.e.*, was not a component of her original S.B. 123 probation. She makes two arguments in that regard.

First, Preston points out that her initial probation revocation was for failing to report to her community corrections supervisor. She suggests that this was not a violation of the K.S.A. 21-4729 drug treatment program, but rather a violation of a condition of a concurrently imposed regular probation. Therefore, she argues that the court ordered her to inpatient treatment as a modified condition of the regular probation sanction, pursuant to K.S.A. 21-4610, rather than incorporating the inpatient treatment into the drug abuse treatment program mandated by the S.B. 123 sanction.

Alternatively, Preston cites to K.S.A. 22-3716(f), which provides that offenders who have violated a condition of their K.S.A. 21-4729 drug and alcohol abuse treatment program are "subject to an additional nonprison sanction" for the violation. One of the statutory examples of nonprison sanctions that may be imposed for noncompliance with the treatment program is "intensified treatment." Preston suggests that the use of the word, "additional," means that the sanction imposed for violating a condition of the original drug abuse treatment program is separate and distinct from and not a part of the of the original treatment program contemplated by S.B. 123. Accordingly, Preston argues that her Valeo inpatient treatment was ordered as an "intensified treatment" sanction, making it part of her "regular probation" which is not subject to the jail time credit preclusion of K.S.A. 21-4603d(n). Essentially, under

Preston's reasoning, the S.B. 123 probation would consist solely of the originally adopted drug treatment program which could not be modified or revised.

The State counters that Preston did not make these creative arguments to the district court and should not be permitted to raise the issues for the first time on appeal. See *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006). Trial counsel did not suggest that Preston was concurrently serving two or more nonprison sanctions; that only one of the sanctions was contemplated by S.B. 123 and subject to K.S.A. 21-4603d(n); and that the inpatient treatment was not a component of the S.B. 123 sanction. To the contrary, counsel specifically said that Preston was a "Senate Bill 123 Person." Nevertheless, the interpretation of K.S.A. 21-4603d(n), in light of other statutes dealing with probation violations, specifically K.S.A. 21-4614a, was placed in issue before the trial court, leading us to address the merits of Preston's claims.

Preston has moved to include her LSI-R report in the appeal record, presumably because it would show that inpatient treatment was not initially recommended as part of the K.S.A. 21-4729 drug abuse treatment program. We deny that motion because we do not deem the LSI-R report to be necessary for our decision.

K.S.A. 21-4729(b)(1) provides for a drug abuse assessment and "a *recommendation* concerning drug abuse treatment for the offender." (Emphasis added.) It is the *court* that commits the offender to a drug treatment program. K.S.A. 21-4729(c). Therefore, evidence of the recommended treatment would not prove that inpatient treatment was omitted from the district court's originally ordered mandatory drug treatment program.

Even if the court did initially order a drug treatment program in accord with the LSI-R and that report did not include an inpatient treatment component, we would not find the LSI-R to be helpful. As will be discussed below, we reject Preston's suggestion that a sentencing court cannot revise or modify a K.S.A. 21-4729(c) drug abuse treatment program, but rather that it can only order an additional "regular" probation sanction. Therefore, proof of the originally ordered treatment program does not affect our decision.

We turn now to Preston's contention that the court ordered Valeo inpatient treatment as a regular probation sanction for failing to report. The court's pronouncement belies that assertion. To re-iterate, at the hearing which dealt in part with the inpatient treatment, the court announced: "[Y]ou have been placed on Community Corrections Probation on this date, October 12, 2006, for a period of 18 months per SB 123 for the offense of Drugs; Opiates or Narcotics; Possession; First Offense." Clearly, the district court intended the Valeo inpatient treatment to be part of a S.B. 123 probation.

Next, we reject Preston's contention that the legislature, through its enactment of K.S.A. 22-3716(f), intended any modification or revision to the original drug abuse treatment program to be outside the parameters of S.B. 123. A review of the legislative history suggests that the legislative intent was to make S.B. 123 comprehensive in effecting its goals.

In a February 12, 2003, memorandum to the Senate Judiciary Committee, the Kansas Sentencing Commission identified the goal of the alternative drug policy (S.B. 123) as: "to provide community punishment and the opportunity for treatment to nonviolent offenders with drug abuse problems in order to more effectively address the revolving door of drug addicts through the state prisons, which should be reserved for serious, violent offenders." The memorandum commented that the treatment continuum must include long-term residential and intensive outpatient substance abuse education and relapse prevention and emphasized that the ordered substance abuse treatment program needed to match the level of treatment to the offender's particular substance abuse needs.

Obviously, then, to effect the goals of the legislation, the S.B. 123 substance abuse treatment program must be amenable to modification or revision to meet the offender's current needs, as those needs change or become more clearly defined. In this instance, Preston's conduct suggested that she was unable to handle her addiction problem while on her own. Accordingly, the district court ordered inpatient treatment to address Preston's needs, which fell squarely within the purpose of the S.B. 123 probation. Clearly, when ordering inpatient treatment, the district court intended to

modify Preston's mandatory drug treatment program, and we find such modification to have been proper.

In conclusion, we find that Preston's inpatient treatment at Valeo was time spent participating in the treatment program contemplated by K.S.A. 21-4603d(n) and that such time shall not be credited as service on her underlying prison sentence.

## EQUAL PROTECTION VIOLATION

Finally, Preston contends that, if K.S.A. 21-4614a and K.S.A. 21-4603d(n) are in conflict, then such conflict violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, § 1. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The Kansas Constitution Bill of Rights, § 1, is given the same effect as the Equal Protection Clause of the Fourteenth Amendment. *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005).

Preston concedes that the rational basis test applies to her constitutional claim because the legislative classification does not target a suspect class or burden a fundamental right.

" 'The rational basis test contains two substantive limitations on legislative choice: (1) legislative enactments must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. These limitations amount to a prescription that all persons similarly situated should be treated alike.' " *State v. Mueller*, 271 Kan. 897, 903, 27 P.3d 884 (2001), *cert. denied* 535 U.S. 1001 (2002) (quoting *Chiles v. State*, 254 Kan. 888, 895, 869 P.2d 707, *cert. denied* 513 U.S. 850 [1994]).

Preston then attempts to refute that there is any legitimate goal in the differing treatment of persons who are ordered to complete inpatient treatment as a condition of probation.

While a persuasive argument may be made for the legitimate goals supporting the unequal treatment of probationers ordered to inpatient treatment, we perceive a more basic impediment to Preston's equal protection claim. Preston's arguments rely on her classification of persons who are similarly situated as being all probationers. However, in S.B. 123, the legislature established a separate class of probationers whose circumstances differ from that of other

probationers. "It is well settled that, when circumstances differ, drawing distinctions under the KSGA does not violate the Equal Protection Clause." *Gaudina*, 284 Kan. at 373. Accordingly, Preston is similarly situated with all other S.B. 123 probationers; members of that class are not treated unequally; and K.S.A. 21-4603d(n) does not violate equal protection.

Affirmed.