No. 103,371

LOUIE R. MARTIN, *Appellant,* v. KANSAS PAROLE BOARD,
*Appellee.*

(255 P.3d 9)

Opinion filed June 10, 2011.

*Curtis N. Holmes,* of Crow & Associates, of Leavenworth, argued the cause and was on the brief for appellant.

*Eric J. Aufdengarten,* assistant attorney general, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: On February 13, 2008, when Louie R. Martin was released on postrelease supervision, he was given an expiration of postrelease supervision date of June 29, 2009. Shortly after his release, the Kansas Legislature passed an amendment to K.S.A. 21-4608, which impacted Martin's previously imposed postrelease expiration date by extending it nearly 11 years. After the enactment of the 2008 amendment to K.S.A. 21-4608, the Kansas Parole Board (Parole Board) informed Martin that his new postincarceration supervision discharge date was April 13, 2020. Martin filed a petition seeking a writ of habeas corpus, which was denied by the district court. Martin appeals.

*Procedural History*

Beginning in 1988, Martin committed a series of unrelated criminal offenses in three Kansas counties. These sentences were combined into an aggregate sentence of 8- to 30-years, under the indeterminate sentencing scheme in effect at the time. The Kansas Department of Corrections calculated a sentence-begins date of November 8, 1990.

Because Martin's convictions included a conviction for aggravated battery, which would be a level 4 nondrug felony under the sentencing guidelines, pursuant to K.S.A. 21-3414(a)(1)(A), the Department of Corrections determined that he was not eligible for retroactive application of the sentencing guidelines. Under the indeterminate sentencing scheme, Martin was eligible for parole after 4 years and for conditional release after 15 years. Parole is discretionary with the Parole Board, but conditional release is mandatory. Martin would have remained on parole until the expiration of his 30-year sentence or until otherwise discharged by the Parole Board.

While serving this aggregated sentence, Martin was convicted of a new crime of aggravated battery, in Reno County, case No. 99-CR-48, for an offense occurring December 4, 1998. On July 9, 1999, Martin was sentenced to 32 months, consecutive to the underlying 8- to 30-year indeterminate sentence, with 24 months' postrelease supervision.

On April 2, 2004, the Parole Board ordered Martin to serve to his conditional release date on the 8- to 30-year sentence due to his violent behavior in prison and new crime during incarceration. Martin's conditional release date was calculated to be October 26, 2005. Pursuant to K.S.A. 21-4608(e)(2), on that date, Martin began serving the 32-month sentence imposed in the Reno County case.

On February 13, 2008, Martin was released on postrelease supervision. The certificate of release states that Martin "shall be under the jurisdiction of the Kansas Parole Board and the Secretary of Corrections until the expiration of the period of post release supervision, plus the amount of good time credits earned and retained by the inmate, to wit, June 26, 2009." This period of post-

release supervision reflects the 24 months imposed on the 1999 conviction pursuant to K.S.A. 1993 Supp. 21-4608(e)(2).

On August 1, 2008, the Parole Board informed Martin that his previous postincarceration supervision discharge date of June 26, 2009, had been extended to April 13, 2020. This change was made pursuant to 2008 H.B. 2707, which amended K.S.A. 21-4608. Martin filed a petition for writ of habeas corpus against the Parole Board on April 15, 2009, claiming that the change in his postincarceration supervision discharge date is an unlawful ex post facto law.

On May 19, 2009, the district court held a hearing on the matter. The parties presented arguments on whether the Parole Board was the proper party and whether the 2008 amendment to K.S.A. 21-4608(e) was unconstitutional. On October 5, 2009, the district court filed a written order, finding that the Parole Board was the proper party and that the Secretary of Corrections was not a necessary party. The court also found that the 2008 amendment was not unconstitutional because Martin's supervision will not last beyond the 30-year sentence imposed in 1991; therefore, the court dissolved Martin's writ of habeas corpus and dismissed the case. Martin appeals the district court's denial of his habeas corpus petition.

## ANALYSIS

Martin claims that the 2008 amendment to K.S.A. 21-4608(e)(2) is an impermissible ex post facto law because the Parole Board applied the amendment to extend his postrelease supervision from June 26, 2009, to April 13, 2020. Before we can determine whether this amendment is an impermissible ex post facto law, we must consider the meaning and effect of the 1993 version of K.S.A. 21-4608(e)(2). In December 1998, when Martin committed the new offense of aggravated battery, the 1993 version of K.S.A. 21-4608(e)(2) provided:

"If a person is sentenced to prison for a crime committed on or after July 1, 1993, while the person was imprisoned for an offense committed prior to July 1, 1993, and the person is not eligible for the retroactive application of the sentencing guidelines act, the new sentence shall not be aggregated with the old sentence

but shall begin when the person is paroled or reaches the conditional release date on the old sentence, whichever is earlier. If the offender was past the offender's conditional release date at the time the new offense was committed, the new sentence shall not be aggregated with the old sentence but shall begin when the person is ordered released by the Kansas parole board or reaches the maximum sentence date on the old sentence, whichever is earlier. The new sentence shall then be served as otherwise provided by law. *The period of postrelease supervision shall be based on the new sentence.*" (Emphasis added.) K.S.A. 1993 Supp. 21-4608(e)(2).

A plain reading of the statute provides that the offender will serve the old sentence until parole or conditional release, at which time the offender will serve the new sentence. After completing the new sentence, the offender will be released on postrelease supervision, the term of which is determined by the new sentence. This reading of the statute is consistent with the Parole Board's interpretation and practice until the 2008 amendment.

Based on the 1993 version of K.S.A. 21-4608(e)(2), Martin's 32-month sentence for the 1998 aggravated battery began on October 26, 2005, the day after his conditional release date on the old aggregated sentence. After serving the 32-month sentence, Martin was released on postrelease supervision on February 13, 2008. At that time, the Parole Board correctly calculated the expiration of Martin's postrelease supervision, including good time credits, to be June 26, 2009. In order to reach that conclusion, the Parole Board disregarded any remaining parole time on Martin's indeterminate sentence and consistent with the plain meaning of K.S.A. 21-4608(e)(2), calculated the postrelease supervision period solely on the basis of the new sentence.

In fact, the legislative history for the 2008 amendment supports our conclusion that our reading of the 1993 version is consistent with the interpretation and application of the statute by anyone who dealt with the statute. Both the House and the Senate Judiciary Committees heard testimony from Tom Stanton of the Kansas County and District Attorneys Association. Mr. Stanton sought "to correct an anomaly in the law which currently acts to free persons who have been convicted of crimes for which the sentence is life from post-release supervision." Minutes, House Judiciary Committee, March 17, 2008 (statement of Thomas R. Stanton, Deputy

Reno County District Attorney, President of the Kansas County and District Attorneys Association); Minutes, Senate Judiciary Committee, February 6, 2008 (statement of Thomas R. Stanton, Deputy Reno County District Attorney, President of the Kansas County and District Attorneys Association). The Parole Board also presented testimony to both committees. The Parole Board's memorandum indicates that it was reluctant to release offenders on parole due to the shortened postrelease time. The Parole Board sought to have the amendment apply to all indeterminate sentences, such as we have in this matter, rather than only to life sentences. Minutes, House Judiciary Committee, March 17, 2008 (statement of Patricia Biggs, Kansas Parole Board, and written memorandum from the Kansas Parole Board); Minutes, Senate Judiciary Committee, February 6, 2008 (statement of Robert Sanders, Kansas Parole Board, and written memorandum from the Kansas Parole Board).

The Parole Board now contends that its previous interpretation has the absurd result of allowing a prisoner to shorten his or her sentence by committing a new crime while imprisoned. Unfortunately, the legislative history on 1993 S.B. Bill 423 is silent on the intent of K.S.A. 21-4608(e)(2). Minutes, House Judiciary Committee, March 24, 1993 (Testimony presented this bill as classification of previously unranked crimes, reconciliation of conflicts in the severity level of crimes, and creation of the border boxes.); Minutes, Senate Judiciary Committee, March 19, 1993 (Testimony presented this bill as classification of previously unranked crimes, reconciliation of conflicts in the severity level of crimes, creation of the border boxes, changes of the severity level of certain crimes, and clarification on the retroactivity of the sentencing guidelines to ease the workload on staff by eliminating the need to prepare a report for inmates who were not eligible for retroactive application of the law.). However strange this result may seem in isolation, the legislature may have intended to shorten postrelease supervision terms—the recodification of the criminal code and change to presumptive sentencing grids was intended, at least in part, to reduce prison populations and divert offenders to community-based corrections options. See Report on Kansas Legislative Interim Studies

to the 1992 Legislature, Presumptive Sentencing and Recodification of the Criminal Code (Proposal No. 13).

The Parole Board now advances a new construction of K.S.A. 1993 Supp. 21-4608(e)(2) that is contrary to the Board's application of the statute to Martin when he was released on postrelease supervision in February 2008. Under the Parole Board's new reading of K.S.A. 1993 Supp. 21-4608(e)(2), the last two sentences of the subsection only apply to those inmates who had reached their conditional release date prior to the commission of a new crime and, therefore, are inapplicable to Martin. Under this theory, the statute gives no guidance on the period of postrelease supervision for an inmate in Martin's situation. This reading is completely nonsensical, considering that the Parole Board would now apply the 2008 amendment of the last sentence (which under this theory would not apply to Martin) to Martin despite the fact that the sentence structure and organization of this section was not changed by the amendment.

Finally, any attempt of the Parole Board to read the 1993 version and the 2008 version of K.S.A. 21-4608(e)(2) to have the same meaning runs afoul of the presumption that the legislature does not revise an existing law without intending to change the law as it existed prior to the amendment. *State v. Preston*, 287 Kan. 181, 184, 195 P.3d 240 (2008) ("Moreover, when the legislature revises an existing law, we presume that it intended to change the law as it existed prior to the amendment.").

We do not pass judgment on the logic or illogic of a statute that allowed an offender to shorten his period of postincarceration supervision by committing another crime while serving his original prison sentence. The 1993 version of K.S.A. 21-4608(e)(2) did just that, while the 2008 amendment to K.S.A. 21-4608(e)(2) calculates postincarceration supervision "based on the longest term of post incarceration supervision imposed for all crimes upon which sentence was imposed or until discharged from supervision by the Kansas parole board."

*Ex Post Facto*

"The constitutionality of a statute is a question of law over which this court has unlimited review." *State v. Beard*, 274 Kan. 181, Syl. ¶ 1, 49 P.3d 492 (2002). "The United States Constitution's ex post facto prohibition forbids legislative enactment of any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to that then prescribed." *Stansbury v. Hannigan*, 265 Kan. 404, Syl. ¶ 1, 960 P.2d 227 (1998).

"Two critical elements must be present for a criminal or penal law to be ex post facto. It must be retrospective, that is, it must apply to events occurring before its enactment, and it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable." *Stansbury*, 265 Kan. 404, Syl. ¶ 2.

The 2008 amendment to K.S.A. 21-4608(e) changed subsection (2) and added subsection (3), as follows:

"(2) If a person is sentenced to prison for a crime committed on or after July 1, 1993, while the person was imprisoned for an offense committed prior to July 1, 1993, and the person is not eligible for the retroactive application of the sentencing guidelines act, the new sentence shall not be aggregated with the old sentence but shall begin when the person is paroled or reaches the conditional release date on the old sentence, whichever is earlier. If the offender was past the offender's conditional release date at the time the new offense was committed, the new sentence shall not be aggregated with the old sentence but shall begin when the person is ordered released by the Kansas parole board or reaches the maximum sentence date on the old sentence, whichever is earlier. The new sentence shall then be served as otherwise provided by law. The period of ~~postrelease~~ post incarceration supervision shall be based on the ~~new sentence~~ longest term of post incarceration supervision imposed for all crimes upon which sentence was imposed or until discharged from supervision by the Kansas parole board. The term of post incarceration supervision imposed by this paragraph shall apply retroactively to crimes committed prior to the effective date of this act.

"(3) As used in this subsection, 'post incarceration supervision' includes parole and postrelease supervision." 2008 H.B. 2707.

K.S.A. 2008 Supp. 21-4608(e)(2) explicitly states that it is to apply retroactively, satisfying the first element of an ex post facto law: "The term of post incarceration supervision imposed by this paragraph shall apply retroactively to crimes committed prior to the effective date of this act."

We have not addressed whether an increase in the period of parole or postrelease supervision constitutes an increase in punishment for ex post facto purposes, but the period of parole or postrelease supervision is undeniably part of the sentence imposed. Under the sentencing guidelines, "the sentencing court shall pronounce *the complete sentence which shall include the prison sentence*, the maximum potential reduction to such sentence as a result of good time *and the period of postrelease supervision* at the sentencing hearing." (Emphasis added.) K.S.A. 2010 Supp. 21-4704(e)(2). Under the indeterminate sentencing scheme, "[t]he period served on parole or conditional release shall be deemed service of the term of confinement." K.S.A. 22-3722. Other jurisdictions have come to a similar conclusion. *United States v. Paskow*, 11 F.3d 873, 877-78 (9th Cir. 1993) (holding that changes to either parole or supervised release could violate ex post facto principles); *In re Stanworth*, 33 Cal. 3d 176, 188, 187 Cal. Rptr. 783, 654 P.2d 1311 (1982) (holding that a change in the standards used to determine the length of a parole term violated the ex post facto clause); *Byrnes v. Board of Parole and Post-Prison Supervision*, 134 Or. App. 296, 300, 894 P.2d 1252 (1995) ("Because parole is a component of a sentence, no law that increases the term of parole may be applied to a convicted person to the person's detriment if the law was adopted after the date on which the person committed the underlying crime."). For these reasons, we hold that a change to the period of parole or postrelease supervision is a change in punishment for ex post facto considerations.

Because the 2008 amendment to K.S.A. 21-4608(e)(2) is retrospective and changes the term of postrelease supervision, the law violates ex post facto protections if it acts to the detriment of the offender. See *Stansbury*, 265 Kan. at 417 (holding that the 1993 amendment to K.A.R. 44-6-124[g][6], which changed the calculation of good time credits to the detriment of the offender, was an impermissible ex post facto law). Here, Martin, who was on postrelease and had received a correctly calculated certificate of release, was clearly disadvantaged when the Parole Board recalculated the termination of his postrelease supervision extending it from June 26, 2009, to April 13, 2020. Martin's 32-month guide-

lines sentence and 24-month postrelease supervision period supplanted his parole period on the indeterminate sentences. As a result, the 2008 amendment to K.S.A. 21-4608(e)(2) cannot be applied to Martin without running afoul of ex post facto protections.

Because the 2008 amendment to K.S.A. 21-4608(e)(2) is an impermissible ex post facto law as applied to Martin, Martin's original postrelease supervision expiration date of June 26, 2009, is effective.

Reversed.