No. 100,682

STATE OF KANSAS, *Appellee*, v. DANIEL PEREZ, JR., *Appellant*.

(261 P.3d 532)

Modified opinion filed March 23, 2012.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Michael A. Russell*, chief deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MALONE, J.: Daniel Perez, Jr., appeals his convictions of first-degree felony murder, criminal discharge of a firearm at an occupied dwelling, and conspiracy to commit criminal discharge of a firearm at an occupied dwelling. Perez claims: (1) the district court violated his constitutional rights by deciding the State's motion for adult prosecution without using a jury to determine the facts; (2) the district court erred by instructing the jury at trial that "another trial would be a burden on both sides;" and (3) the district court erred by failing to instruct the jury at trial on unintentional but reckless second-degree murder as a lesser included offense of felony murder. This court has jurisdiction under K.S.A. 22-3601(b) based on Perez' conviction of an off-grid crime.

## FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2007, rival street gangs Florencia and Familia Loca (FL) were engaged in a series of violent confrontations in Kansas City. Carlos "Papa" Moreno was a leader of the Florencia gang. Valentino Hernandez, known as Listo, and Jos Franco, known as Filero, were two leaders of FL. Perez, born on August 17, 1990, and Luis Gonzalez, also a juvenile, were lower ranking "soldiers" of FL.

On April 1, 2007, Filero's house was the target of a street-side shooting. Filero believed that Florencia was responsible for the shooting and wanted revenge. Two days later, on April 3, 2007, Perez and Gonzalez went to Filero's house to check in with the gang leaders. When they arrived, Listo indicated they were being sent on "a mission" to shoot up Moreno's house. Perez initially refused the mission, resulting in an argument with Listo. Filero then entered the room with a pistol-grip shotgun and told Gonzalez to do the shooting. Gonzalez responded that he was too small to handle the shotgun. Eventually Filero and Listo left the room. When they were alone, Perez told Gonzalez that he did not want to get into trouble with the gang leaders for failing to follow orders. Perez then informed Listo and Filero that he would complete the mission. Gonzalez also agreed to help.

Perez, Gonzalez, and Filero went on a dry run of the shooting mission and Filero showed Perez and Gonzalez where Moreno lived. When they returned to Filero's house, Listo was wiping down a shotgun with oil in order to remove fingerprints. Perez put on black gloves and took the shotgun from Listo. About 8:30 p.m., Perez and Gonzalez drove to Moreno's house in Gonzalez' car. Gonzalez stopped the car in a nearby alley and Perez got out and walked toward Moreno's house. Gonzalez was unable to see Moreno's house from the alley, but he heard four or five gunshots coming from the direction of the house. Perez then ran back to the car, threw the shotgun in the backseat, and jumped into the passenger seat. Perez and Gonzalez then left the alley and returned to Filero's house.

Moreno later testified that on April 3, 2007, he was watching television in his bedroom when he heard several gunshots. He stated that he crawled out of the bedroom and picked up his 2-year-old niece, Yelena Guzman, who was playing in the front room near the door. Moreno noticed that Yelena was bleeding and he carried her toward the back of the house. Yelena later died of a gunshot wound to the head. Kansas City police officers recovered four shotgun shells and one shotgun slug at Moreno's house. Three of the shots had penetrated the front door.

On July 19, 2007, the police interviewed Gonzalez and he implicated Perez in the shooting. Gonzalez later agreed to testify against Perez in exchange for being prosecuted as a juvenile for his involvement in the crimes.

The State charged Perez with first-degree felony murder, criminal discharge of a firearm at an occupied dwelling, and conspiracy to commit criminal discharge of a firearm at an occupied dwelling. On September 11, 2007, the State moved to try Perez as an adult. After hearing the evidence and considering the factors enumerated in K.S.A. 38-2347, the district court authorized adult prosecution. Perez raised no procedural objections in district court to the State's motion for adult prosecution.

At the jury trial, Gonzalez testified against Perez. Gonzalez described the events leading up to the shooting on April 3, 2007, and he testified that Perez intended to hit "Papa" in the shooting. Cory

Cisneros, another FL gang member, also testified that he was at Filero's house on April 3, 2007. Cisneros testified that he overheard Filero order Perez and Gonzalez to shoot Moreno's house. He testified that he saw Perez, Gonzalez, and Filero leave to do a dry run of the mission. Cisneros testified that later that evening he witnessed Perez and Gonzalez return from the shooting and overheard them say, "we got 'em." The State also introduced into evidence the transcripts of recorded telephone calls Perez made to his mother while he was in jail. During one telephone call, his mother asked Perez if he was guilty and he replied, "of course, yes." In another telephone call, his mother asked Perez if Gonzalez' story was accurate and he replied, "more or less."

Perez did not testify at trial but his defense was that he was not the shooter and that he was being set up to take the fall for higher ranking gang members, Filero and Listo. Perez called three witnesses who testified that Perez was trying to distance himself from gang activity. Perez challenged Gonzalez' credibility and pointed out his testimony was in exchange for a favorable plea agreement. At the conclusion of the evidence, the district court instructed the jury without objection on the charge of felony murder without any lesser included offenses. The jury found Perez guilty as charged. He timely appealed his convictions.

## MOTION FOR ADULT PROSECUTION

Perez first claims that because the district court's decision to authorize adult prosecution substantially increased the penalty for the offenses, he was entitled to have a jury make this determination under the principles recited in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). This argument raises a question of law and our standard of review is unlimited. See *State v. Jones*, 273 Kan. 756, 770, 47 P.3d 783, *cert. denied* 537 U.S. 980 (2002).

We note that the same argument Perez is making already has been rejected by this court in four prior cases: *State v. Tyler*, 286 Kan. 1087, 1095-96, 191 P.3d 306 (2008); *State v. Mays*, 277 Kan. 359, 367-68, 85 P.3d 1208 (2004); *State v. Kunellis*, 276 Kan. 461, 465, 78 P.3d 776 (2003); and *Jones*, 273 Kan. at 770-78. Moreover,

Perez acknowledges that he presents this argument for the first time on appeal. In district court, Perez raised no objection to the court deciding the motion for adult prosecution without using a jury to determine the facts. In a single sentence in his brief, Perez asserts that an issue can be raised for the first time on appeal in "exceptional circumstances where the asserted error involves a strictly legal question that will be determinative of the case or where consideration of the new issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights."

Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Leshay*, 289 Kan. 546, 553, 213 P.3d 1071 (2009). However, an appellate court may consider a constitutional issue raised for the first time on appeal if the issue falls within one of three recognized exceptions: (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or reason for its decision. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010).

Supreme Court Rule 6.02(e) (2010 Kan. Ct. R. Annot. 39) provides that if an issue was not raised in district court, the appellant must "explain why" the issue should be considered for the first time on appeal. Perez presents no explanation for why the issue should be considered for the first time on appeal other than a general statement that "this circumstance fits within the exceptions" recognized by case law. We note that in *Kunellis*, this court refused to address the defendant's argument that the State's motion for adult prosecution should have been decided by a jury because the issue was being raised for the first time on appeal and already had been resolved in a prior case against the defendant's position. 276 Kan. at 465. For the same reasons we stated in *Kunellis*, we decline Perez' request to consider this constitutional issue for the first time on appeal.

## ALLEN-TYPE INSTRUCTION

Perez next claims that the district court committed reversible error when it gave an *Allen*-type instruction to the jury before deliberations began. See *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). Perez did not object to the instruction when it was given to the jury; therefore, this court reviews the instruction under a clearly erroneous standard. K.S.A. 22-3414(3). "An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Martinez*, 288 Kan. 443, 451-52, 204 P.3d 601 (2009).

The district court provided the jury with Instruction No. 15 which stated in relevant part:

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charges to a different jury at a later time. *Another trial would be a burden on both sides.*" (Emphasis added.)

The language from Instruction No. 15 came from a prior version of PIK Crim. 3d 68.12, commonly known as the "deadlocked jury" instruction. In the current pattern instruction, the language "another trial would be a burden on both sides" has been removed. Otherwise, the district court's Instruction No. 15 tracks almost identically with the current pattern instruction.

This court has specifically addressed the language at issue in several recent cases. In *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2009), this court held that the language "[a]nother trial would be a burden on both sides" is erroneous because it is misleading and inaccurate; however, it was not reversible error. In *Salts*, the instruction was given before the jury deliberated and was included with all the other jury instructions. The defendant did not object to the instruction. The *Salts* court found that, under the clearly erroneous standard, there was no real possibility that the jury would have rendered a different verdict if the error had not occurred. 288 Kan. at 267; see also *State v. Brown*, 291 Kan. 646, 660, 244 P.3d 267 (2011) (same challenged language in jury in-

struction was erroneous, but not clearly erroneous); *State v. Colston*, 290 Kan. 952, 976-78, 235 P.3d 1234 (2010) (same result); *State v. Ellmaker*, 289 Kan. 1132, 1146-47, 221 P.3d 1105 (2009) (same result), *cert. denied* 130 S. Ct. 3410 (2010).

Perez argues that the language "another trial would be a burden on both sides" is reversible error in his case because there is a real possibility the jury would have rendered a different verdict without that language. Specifically, Perez points out that the most damaging trial testimony identifying him as the shooter came from Gonzalez, whose credibility was undermined as a result of his favorable plea agreement. However, the State points out that Gonzalez' testimony was corroborated by the testimony of Cisneros, who overheard Filero order Perez to do the shooting. Cisneros also witnessed Perez and Gonzalez return from the shooting and overheard them say, "we got 'em." The State also introduced into evidence the transcripts of recorded telephone calls Perez made to his mother while he was in jail. During one telephone call, his mother asked Perez if he was guilty and he replied, "Of course, yes." In another telephone call, his mother asked Perez if Gonzalez' story was accurate and he replied, "more or less."

Instruction No. 15 was given before the jury deliberated and was included with all the other jury instructions. Perez did not object to the instruction. After the verdicts were read, the district court polled the jury and each juror stated he or she agreed with the verdicts. The evidence against Perez was substantial. This case is similar to *Salts, Ellmaker, Colston*, and *Brown* regarding the effect of the *Allen*-type instruction, and the result should be the same. We are not firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. Accordingly, we conclude that Instruction No. 15 was not clearly erroneous.

## LESSER INCLUDED OFFENSE OF FELONY MURDER

Finally, Perez claims the district court erred by failing to instruct the jury at trial on unintentional but reckless second-degree murder as a lesser included offense of felony murder. Perez acknowledges that he did not request a lesser included offense instruction

at trial. Therefore, this court reviews the district court's failure to give the instruction under the clearly erroneous standard. K.S.A. 22-3414(3). "An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *Martinez*, 288 Kan. at 451-52.

Perez was charged with felony murder arising from the shooting death of Guzman. K.S.A. 21-3401(b) defines felony murder as "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436." Here, the underlying felony predicating the felony-murder charge was criminal discharge of a firearm at an occupied dwelling in violation of K.S.A. 21-4219, which constitutes an inherently dangerous felony. See K.S.A. 21-3436(a)(15) (any felony offense as provided in K.S.A. 21-4219).

On appeal, Perez argues that this court should reconsider its traditional approach to lesser included offense instructions in felony-murder cases. Perez acknowledges that under longstanding precedent, lesser included offense instructions for felony murder are not required unless "the evidence of the underlying felony is weak, inconclusive, or conflicting." *State v. Hoffman*, 288 Kan. 100, 105, 200 P.3d 1254 (2009). However, Perez argues that there is "[n]o statutory or common law authority" for this approach and that this court should follow the general rule under K.S.A. 22-3414(3) in determining whether jury instructions should be given for lesser included offenses. Perez contends that under this statute, the jury should have been instructed on unintentional but reckless second-degree murder because firing a shotgun into an occupied house is "extreme indifference to the value of human life." See K.S.A. 21-3402(b) ("Murder in the second degree is the killing of a human being committed . . . unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life.").

Perez' argument was addressed by this court in *State v. Berry*, 292 Kan. 493, 254 P.3d 1276 (2011). In *Berry*, the defendant struck and killed another motorist during a high-speed getaway from a traffic stop. He was apprehended, and cocaine was discovered in

his possession. The defendant was charged with first-degree felony murder based on the underlying felony of possession of cocaine. At trial, the defendant requested lesser included offense instructions for unintentional but reckless second-degree murder, involuntary manslaughter, and vehicular homicide. Because the evidence supporting the possession of cocaine charge was substantial, the district court denied the request for lesser included offense instructions pursuant to the judicially created felony-murder instruction rule. The defendant was convicted of first-degree felony murder.

On appeal, this court observed that lesser included offense jury instructions are governed by K.S.A. 22-3414(3), which directs that instructions must be given when there is some evidence that would reasonably justify a conviction of some lesser included crime. 292 Kan. 493, Syl. ¶ 2. This court noted that when a party claims K.S.A. 22-3414(3) requires giving an instruction on a lesser included crime, the analysis focuses on the evidence supporting the lesser offense. 292 Kan. 493, Syl. ¶ 3. This court traced the history of the judicially created felony-murder instruction rule which requires lesser included offense instructions only when evidence of the underlying felony is weak, inconclusive, or conflicting and noted that the analysis under the judicially created rule focuses on the evidence supporting the underlying felony and not the evidence supporting lesser offenses. 292 Kan. 493, Syl. ¶ 4.

This court further observed that K.S.A. 22-3414(3) does not exclude felony murder from its mandate and makes no exception for the felony-murder instruction rule regarding lesser included offense instructions. 292 Kan. 493, Syl. ¶ 5. After determining that the rationale for adopting the felony-murder instruction rule was flawed, this court concluded the rule must be abandoned. This court held that K.S.A. 22-3414(3) should be applicable to felony murder. Under this statute, instructions on the lesser degrees of homicide are proper in felony-murder cases when there is some evidence reasonably justifying a conviction of some lesser included crime beyond a reasonable doubt. 292 Kan. 493, Syl. ¶ 6.

Although this court has now embraced the analysis advocated by Perez, this does not mean we agree with Perez that the district court erred by failing to instruct the jury at trial on unintentional but reckless second-degree murder as a lesser included offense of felony murder. Under K.S.A. 22-3414(3), instructions on the lesser degrees of homicide are proper in felony-murder cases when there is some evidence reasonably justifying a conviction of some lesser included crime beyond a reasonable doubt. Perez advances a hypothetical situation and argues the jury should have been instructed on unintentional but reckless second-degree murder because firing a shotgun into an occupied house is "extreme indifference to the value of human life." K.S.A. 21-3402(b). However, Perez cites to no evidence presented at trial which would have reasonably justified a conviction of this crime beyond a reasonable doubt.

The State's evidence at trial established that Perez went to Moreno's house with a shotgun and intentionally fired four or five shots into the front of the house. This act was to seek revenge for an earlier shooting at Filero's house. Perez, Gonzalez, and Filero went on a dry run of the shooting mission to make sure that Perez and Gonzalez knew where Moreno lived. Perez and Gonzalez later drove to Moreno's house in Gonzalez' car. Perez knew Moreno's house was occupied when he fired the shots. According to Gonzalez, Perez intended to hit Moreno in the shooting. Instead, one of the shots fired by Perez struck Guzman in the head. When Perez and Gonzalez returned from the shooting, Cisneros overheard them say, "we got 'em." Perez did not testify at trial, but his defense was that he was not the shooter and that he was being set up to take the fall for higher ranking gang members.

K.S.A. 21-3402(b) defines murder in the second degree as the killing of a human being committed unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life. Here, the State's evidence established that Perez intended to hit Moreno when he discharged the firearm at the occupied dwelling, but he hit Guzman instead. Nevertheless, the State's evidence established that the killing was intentional and not reckless. Thus, K.S.A. 21-3402(b) does not apply. See *State v.*

*Jones,* 257 Kan. 856, 859, 896 P.2d 1077 (1995) (Under doctrine of transferred intent, the fact that a homicidal act was directed against one other than the person killed does not relieve the slayer of criminal liability, and the guilt of the perpetrator of the crime is exactly what it would have been had the assault been upon the intended victim instead of another.).

Perez cites *State v. Cordray,* 277 Kan. 43, 82 P.3d 503 (2004), to support his argument that the evidence in his case reasonably justified a conviction of unintentional but reckless second-degree murder. In *Cordray,* this court affirmed the defendant's conviction of unintentional but reckless second-degree murder when the evidence showed that the defendant fired shots into a moving car filled with people, and one shot struck and killed a passenger. The defendant testified that he was aiming at the ground behind the car and that he never intended to hit the car or anyone inside the car. 277 Kan. at 45-46. Perez argues that his case is similar to *Cordray* with the only exception being that Perez fired his gun into an occupied dwelling and not an occupied car.

We disagree. Unlike the defendant in *Cordray* who testified that he was only firing warning shots at the car, Perez did not testify that he fired the shotgun at Moreno's dwelling with the intent to frighten or threaten anyone inside the house. Based on his defense, Perez was not at the scene of the shooting. To the contrary, Gonzalez testified for the State that Perez intended to hit Moreno when he fired the shotgun into the occupied dwelling. *Cordray* provides a good example of a conviction under K.S.A. 21-3402(b) where the killing of a human being was committed unintentionally but recklessly under circumstances manifesting extreme indifference to human life. But the facts of *Cordray* are clearly distinguishable from the facts herein.

Although unintentional but reckless second-degree murder may be a lesser included offense of felony murder in some situations, in this instance there was no evidence presented at trial that would have reasonably justified a conviction of the lesser crime beyond a reasonable doubt. Accordingly, we conclude the district court did not err by failing to instruct the jury at trial on unintentional but

reckless second-degree murder as a lesser included offense of felony murder.

Affirmed.

MALONE, J. assigned.