(294 P.3d 343)
No. 107,916

STATE OF KANSAS, *Appellee*, v. J.D.H., *Appellant*.

Opinion filed January 11, 2013.

*Laura B. Shaneyfelt*, of Shaneyfelt Law, of Wichita, for appellant.

*Matthew J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BUSER and STANDRIDGE, JJ.

STANDRIDGE, J.: J.D.H. appeals from the district court's revocation of his juvenile sentence and the order to serve his underlying adult prison sentence in a case designated as an extended juvenile jurisdiction prosecution (EJJP). For the reasons stated below, we affirm.

## FACTS

In 2011, the State charged J.D.H. with aggravated robbery, aggravated burglary, and aggravated assault. In conjunction with these charges, the State filed a motion for adult prosecution. Thereafter, J.D.H. entered guilty pleas to all three counts, pursuant to a plea agreement in which the parties agreed to designate the proceedings as an EJJP under K.S.A. 2010 Supp. 38-2347. The State agreed to recommend a controlling juvenile sentence of 36 months of intensive supervised probation and an underlying adult sentence of the middle number of the appropriate sentencing grid

box for each count, with Count 1 running consecutive to Counts 2 and 3, which would run concurrently with each other.

The State never filed a written motion seeking to withdraw its motion for adult prosecution and requesting the court designate the proceedings as an EJJP. Nevertheless, the plea agreement stated that the "State agrees to modify its motion requesting Adult Prosecution in these matters; State and Respondent agree that the proceedings be designated an Extended Juvenile Jurisdiction Prosecution." At the plea hearing, the judge explained J.D.H.'s rights under the EJJP statute, designated the proceedings as an EJJP, and found the plea was knowingly, intelligently, and voluntarily entered.

At the sentencing hearing on August 4, 2011, the court told J.D.H. it was going to impose an adult sentence that would be stayed as long as J.D.H. complied with the terms of his juvenile sentence but advised him that if he violated the terms of his juvenile sentence, the court would "have to give" him the adult sentence. J.D.H. indicated to the court that he understood. After the parties agreed that J.D.H.'s criminal history score was a D, the court followed the plea agreement and imposed a controlling juvenile sentence of 36 months of intensive supervised probation and stayed an underlying 126-month adult sentence.

Two months after sentencing, J.D.H.'s intensive supervision officer filed a report stating that J.D.H. had violated his juvenile sentence. The State subsequently filed a motion to revoke J.D.H.'s juvenile sentence. At the hearing on the motion to revoke, J.D.H. acknowledged that he had violated the terms and conditions of his juvenile sentence. The State requested that the underlying adult sentence of 126 months in prison be imposed as required by K.S.A. 2010 Supp. 38-2364(b), which states in pertinent part:

"After the hearing, *if the court finds by a preponderance of the evidence that the juvenile committed a new offense or violated one or more conditions of the juvenile's sentence, the court shall revoke the juvenile sentence and order the imposition of the adult sentence previously ordered pursuant to subsection (a)(2)* or, upon agreement of the county or district attorney and the juvenile offender's attorney of record, the court may modify the adult sentence previously ordered pursuant to subsection (a)(2)." (Emphasis added.)

J.D.H.'s counsel acknowledged that the parties did not agree to modify the underlying adult sentence and, as a result, the district court did not have the discretion to modify J.D.H.'s adult sentence under this statute. Nevertheless, J.D.H.'s counsel argued that the automatic application of K.S.A. 2010 Supp. 38-2364 "abrogates [the district court's] duties as a Judge and I don't think that it's Constitutional." The district court found that J.D.H. had violated the terms of his juvenile probation but continued the sentencing hearing so both parties could provide authority on how to interpret the statute.

At the subsequent sentencing hearing, a different judge presided. J.D.H.'s counsel stated that he realized that the caselaw did not favor the argument he was making, but he wanted to preserve the issue for appeal. The district judge then found the court had no authority to modify the underlying adult sentence, noting:

"The case law says that there is no—once there's a finding that it's a violation, there is no discretion given to the Judge. And that matter is up on appeal right now, as far as I know, because I wanted some clarification from the Court of Appeals under those conditions. There are several cases where they have clearly said that once the violation is found that we have to proceed to Sentencing and there is no discretion.

"And, I think you're right, in the adult court there is some discretion, but they don't give us that under EJJP. So I guess I will affirm what, apparently, the earlier ruling was."

Consequently, the district court ordered J.D.H. to serve the underlying 126-month adult prison sentence.

## ANALYSIS

In challenging the revocation of his juvenile sentence and imposition of the adult sentence, J.D.H. argues on appeal (1) that the district court did not have jurisdiction to impose the EJJP sentence against him under K.S.A. 2010 Supp. 38-2347(a)(3) because the State did not file a motion to request the court to designate the proceeding as an EJJP, (2) that K.S.A. 2010 Supp. 38-2364(b) can be read with K.S.A. 2010 Supp. 22-3716(b) to allow the sentencing judge the option to modify the adult sentence upon a finding that a juvenile has violated his juvenile sentence in an EJJP, and (3) that K.S.A. 2010 Supp. 38-2364 violates the separation of powers

doctrine by prohibiting the sentencing judge from exercising discretion to modify the adult sentence. We address each of these arguments in order.

### 1. *Jurisdiction*

J.D.H. claims the district court did not have jurisdiction to impose the extended juvenile jurisdiction sentence in the first place because the State did not file a motion requesting the district court to designate the proceeding as an EJJP, which J.D.H. contends is required by K.S.A. 2010 Supp. 38-2347(a)(3). Before we consider the merits of J.D.H.'s argument, however, we first must consider whether this court has jurisdiction to address it.

The right of appeal is entirely a statutory right; no appellate review is required by the United States Constitution or the Kansas Constitution. As such, this court has no jurisdiction to entertain an appeal by a defendant in a criminal case unless the defendant appeals within the time prescribed by the statutes providing for such an appeal. *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008). An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the appeal must be dismissed. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010).

A defendant must file a notice of appeal within 14 days of sentencing under K.S.A. 2011 Supp. 22-3608(c). See *State v. Phinney*, 280 Kan. 394, 401-02, 122 P.3d 356 (2005). J.D.H. received both his adult and juvenile sentences on August 4, 2011. He did not file his notice of appeal until February 27, 2012, which was over 6 months after the 14-day window. As such, this court does not have jurisdiction to consider J.D.H.'s first claim of error.

### 2. *Modification of a Previously Imposed Underlying Adult Sentence under K.S.A. 2010 Supp. 38-2364(b)*

J.D.H. contends that K.S.A. 2010 Supp. 38-2364(b) must be construed in conjunction with K.S.A. 2010 Supp. 22-3716(b), which necessarily means that a sentencing judge has discretion to modify an EJJP adult sentence after finding that a juvenile has violated the terms of an EJJP juvenile sentence. Although conced-

ing that several panels of this court have issued opinions to the contrary, J.D.H. requests this panel consider the issue in order to preserve the issue for further appellate review.

Again, we first must determine whether we have jurisdiction to address the issue raised. Generally, issues not raised before the district court cannot be raised on appeal. *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009). However, an appellate court may consider an issue raised for the first time on appeal if it falls within three recognized exceptions: (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision. *State v. Anderson*, 294 Kan. 450, 464-65, 276 P.3d 200 (2012). Supreme Court Rule 6.02(e) (2011 Kan. Ct. R. Annot. 39) requires the appellant to identify which of these exceptions apply and why it is applicable. 294 Kan. at 465.

In this case, J.D.H. claims K.S.A. 2010 Supp. 22-3716 should be read in conjunction with K.S.A. 2010 Supp. 38-2347 to allow a defendant to seek modification of a previously imposed underlying adult sentence. As the State notes, however, J.D.H. did not make this argument to the district court; instead, J.D.H. conceded that the district court did not have discretion to change the original adult sentence upon a finding that J.D.H. has violated his juvenile sentence. Moreover, J.D.H. failed to acknowledge in his appellate brief that he was raising the argument for the first time on appeal; thus, J.D.H. failed to identify which, if any, exception would allow him to raise the issue for the first time on appeal and to explain why the exception applies.

In *State v. Perez*, 294 Kan. 38, 42, 261 P.3d 532 (2012), the defendant summarily argued that a particular issue should be considered for the first time on appeal because " 'this circumstance fits within the exceptions' " recognized by caselaw. Because this shortcoming violated Supreme Court Rule 6.02(e) and the issue already had been resolved in a prior case against the defendant's

position, our Supreme Court declined to consider the issue for the first time on appeal. 294 Kan. at 42-43; see also, *e.g., State v. Johnson*, 293 Kan. 959, 963-65, 270 P.3d 1135 (2012) (declining to address merits of State's argument where State provided no explanation why issue should be considered for first time on appeal).

In this case, J.D.H. offers even less explanation than the defendant in *Perez* for why the court should consider the issue for the first time on appeal. And, like *Perez*, this court already has addressed and resolved the issue contrary to the position J.D.H. is raising. In the absence of any facts or argument to demonstrate why the issue raised by J.D.H. for the first time on appeal falls within one of the three recognized exceptions, we may decline to consider this constitutional issue for the first time on appeal. But even if we did choose to consider it, J.D.H.'s argument regarding the proper interpretation of K.S.A. 2010 Supp. 38-2364 is without merit.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Goldsmith v. State*, 292 Kan. 398, 400, 255 P.3d 14 (2011). The statute reads:

"When it appears that a person sentenced as an extended jurisdiction juvenile has violated one or more conditions of the juvenile sentence or is alleged to have committed a new offense, the court, without notice, may revoke the stay and juvenile sentence and direct that the juvenile offender be immediately taken into custody and delivered to the secretary of corrections pursuant to K.S.A. 21-4621, and amendments thereto. The court shall notify the juvenile offender and such juvenile offender's attorney of record, in writing by personal service, as provided in K.S.A. 60-303, and amendments thereto, or certified mail, return receipt requested, of the reasons alleged to exist for revocation of the stay of execution of the adult sentence. If the juvenile offender challenges the reasons, the court shall hold a hearing on the issue at which the juvenile offender is entitled to be heard and represented by counsel. After the hearing, *if the court finds by a preponderance of the evidence that the juvenile committed a new offense or violated one or more conditions of the juvenile's sentence, the court shall revoke the juvenile sentence and order the imposition of the adult sentence previously ordered pursuant to subsection (a)(2)* or, upon agreement of the county or district attorney and the juvenile offender's attorney of record, the court may modify the adult sentence previously ordered pursuant to subsection (a)(2). Upon such finding, the juvenile's extended jurisdiction status is terminated, and juvenile court jurisdiction is terminated. The ongoing jurisdiction for any adult sanction, other than the commitment to the department of corrections, is with the adult court. The juvenile of-

fender shall be credited for time served in a juvenile correctional or detention facility on the juvenile sentence as service on any authorized adult sanction." (Emphasis added.) K.S.A. 2010 Supp. 38-2364(b).

Other panels of this court have already interpreted this statute several times, and in each case the panels came to the same conclusion: the statutory language prevents the district court from doing anything other than imposing the underlying adult sentence.

In *State v. J.H.*, 40 Kan. App. 2d 643, 646, 197 P.3d 467 (2007), the court examined the prior version of K.S.A. 2010 Supp. 38-2364—K.S.A. 38-16,126—which contained the same "shall revoke the juvenile sentence and order the imposition of the adult sentence" language, but not the provision allowing the court to modify the sentence upon the parties' agreement. The court found this language "leaves no doubt as to legislative intent." 40 Kan. App. 2d at 646. The court interpreted the statute to require that "[i]f the trial court after hearing revokes the juvenile sentence, the court is specifically directed to enforce imposition of the adult sentence previously ordered." 40 Kan. App. 2d at 646.

The court next held in *In re E.F.*, 41 Kan. App. 2d 860, 865, 205 P.3d 787 (2009), that the *J.H.* court had properly interpreted the statutory language, then codified at K.S.A. 2008 Supp. 38-2364. The court noted that the language of the statute providing that the court " 'shall revoke the juvenile sentence and order the imposition of the adult sentence previously ordered' " means what it says, noting that "when its terms are met, the statute 'compel[s] incarceration' and leaves the district court no room to consider other alternatives." 40 Kan. App. 2d at 863.

Then, in *State v. I.A.*, No. 104,481, 2011 WL 3250584, at *7 (Kan. App. 2011) (unpublished opinion), the court addressed K.S.A. 2010 Supp. 38-2364 after the legislature had added the provision allowing the court to modify the adult sentence " 'upon agreement of the county or district attorney and the juvenile offender's attorney of record.' " The majority followed *In re E.F.* and *State v. J.H.*:

"The language governing extended jurisdiction juvenile proceedings seems plenty clear. Once the court finds a violation of the juvenile sentence, it must then order that the adult sentence be carried out. The adult sentence, in effect, be-

comes the punishment for the violation of the conditions imposed in an extended jurisdiction juvenile proceeding. At that point, however, the adult sentence has been imposed and has become effective. Then, and only then, does the 'ongoing jurisdiction' of the adult criminal justice system kick in. If the young person fails to comply with the now-controlling adult sentence, an adult criminal court has jurisdiction to address and sanction those failures. The message couldn't be much more obvious." *State v. I.A.*, 2011 WL 3250584, at *4.

The court also held that K.S.A. 2010 Supp. 22-3716, which applies to probation revocation of adult defendants, has no application to the handling of EJJP cases:

"Nothing in K.S.A. 2010 Supp. 38-2364 even hints that the juvenile court might act under K.S.A. 22-3716 to mitigate the contingent adult sentence imposed as part of the extended juvenile jurisdiction. The statute outlines the juvenile process in detail and contains several cross-references to other statutory provisions, including one in the criminal code. Had the legislature intended to transplant or incorporate the provisions of K.S.A. 22-3716 from the code of criminal procedure into K.S.A. 2010 Supp. 38-2364, it would have specifically identified the statute for that purpose. The omission of any such reference is telling, especially given the legislature's careful attention to the use of other statutory cites in outlining how the extended juvenile jurisdiction process is supposed to work." *State v. I.A.*, 2011 WL 3250584, at *4.

Although recognizing that a district court dealing with a probation violation under K.S.A. 2010 Supp. 22-3716 has a broader range of options than does the juvenile court addressing a failed EJJP adjudication, the court found the legislative purpose justified the distinction. It found the EJJP operates as a last chance agreement for a juvenile offender who has already failed in that system and is working on what would be a second felony if committed by an adult, while the adult statute regarding probation violations covers a broad range of offenders and probation breaches, from first-time petty offenders to more serious criminals. The court noted that it made sense for the legislature to afford district courts latitude in fashioning appropriate sanctions for those adult breaches. *State v. I.A.*, 2011 WL 3250584, at *5-6. The court went on to note that adult probation provisions were extended as an inducement, or "carrot," to coax good behavior from the convicted criminal, but the EJJP provisions stayed the underlying adult sentence as a threat, or "stick," to coerce good behavior from the juvenile of-

fender. 2011 WL 3250584, at *6. The court ultimately concluded that K.S.A. 2010 Supp. 22-3716 and K.S.A. 2010 Supp. 38-2364 establish "parallel processes, not dovetailed ones" and are meant to operate independently with two different groups of violators. 2011 WL 3250584, at *6-7.

Notably, Judge Leben dissented in *State v. I.A.* In his dissent, Judge Leben found "nothing inconsistent between the provisions of K.S.A. 38-2364(b) and K.S.A. 22-3716" and stated he would read them together. 2011 WL 3250584, at *8 (Leben, J., dissenting). Noting that the State admitted at oral argument that a juvenile serving an EJJP sentence is serving a "nonprison sanction," Judge Leben found the provisions for a violation of a "nonprison sanction" in K.S.A. 2010 Supp. 22-3716 would apply to an EJJP violation so that that district court would have the option of imposing a lesser sentence (although not an adult probation). 2011 WL 3250584, at *8-9 (Leben, J., dissenting). Judge Leben further found no statutory language in K.S.A. 2010 Supp. 38-2364(b) precluding the application of the adult sentencing provisions, and thus, there was no inconsistency between the two statutes. He also found it unlikely the legislature would have wanted to give fewer options to district courts in dealing with juvenile offenders, given that the juvenile-offender provisions are generally designed to give more, not fewer, chances to juvenile offenders. 2011 WL 3250584, at *9 (Leben, J., dissenting).

J.D.H. urges the court to disregard the opinions issued by other panels of our court and adopt the analysis presented by Judge Leben in his *State v. I.A.* dissent. But Judge Leben's analysis was based on a former version of the law. In the wake of Judge Leben's dissent, this court has followed the *State v. I.A.* majority opinion on at least two occasions and found that the new language of K.S.A. 2010 Supp. 38-2364 "requires imposition of the adult sentence" when the juvenile has admitted violation of the terms of the juvenile sentence not amounting to a new offense. *In re R.L.R.*, No. 107,129, 2012 WL 2926163, at *3 (Kan. App. 2012) (unpublished opinion) (holding "[t]he district court in this case correctly held that it had no option to consider R.L.R.'s motion for dispositional or durational departure," noting "[w]e look to the *I.A.* court's res-

olution of its case for guidance"); *In re F.P.C.*, No. 104,497, 2011 WL 4716724, at *1 (Kan. App. 2011) (unpublished opinion).

The plain language of the statute is clear: unless the parties agree otherwise, the district court does not have discretion to modify an adult sentence after finding that a juvenile has violated the terms and conditions of his or her juvenile sentence in an EJJP. K.S.A. 2010 Supp. 38-2364(b).

### 3. *Separation of Powers*

J.D.H. argues that if the court finds K.S.A. 2010 Supp. 38-2364 does not give the district court discretion to depart from a previously imposed adult sentence in an EJJP case, the court should find the inability to exercise such discretion violates the separation of powers doctrine set forth in the Kansas Constitution.

The constitutionality of a statute is a question of law over which the court has unlimited review. *Martin v. Kansas Parole Board*, 292 Kan. 336, 342, 255 P.3d 9 (2011). While the Kansas Supreme Court has the right to interpret our Kansas Constitution in a manner different than the United States Constitution has been construed, it has not traditionally done so. *State v. Scott*, 286 Kan. 54, 93, 183 P.3d 801 (2008). A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the authority and the duty to do so. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009).

The Kansas Constitution, like the United States Constitution, has no express provision establishing the doctrine of separation of powers. However, Kansas courts have recognized that the very structure of the three-branch system of government creates the doctrine. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59, 687 P.2d 622 (1984). Each branch of government—legislative, executive, and judicial—is given the powers and functions appropriate to it, thus avoiding a dangerous concentration of power through the checks and balances each branch has against the others. *State v. Greenlee*, 228 Kan. 712, 715, 620 P.2d 1132 (1980). Although early Kansas decisions applied the doctrine strictly to allow no overlapping of powers, more recent decisions

recognize "that there may be a certain degree of 'blending or admixture' of the three powers of government and that absolute separation of powers is impossible." *State v. Beard*, 274 Kan. 181, 186, 49 P.3d 492 (2002). Thus, "[i]t is now a well-recognized fact that the powers of one branch may overlap with another branch's powers." 274 Kan. at 186.

To determine whether a statute unconstitutionally violates the separation of powers doctrine, Kansas courts apply the following principles:

" ' "(1) A statute is presumed to be constitutional. All doubts must be resolved in favor of its validity, and before a statute may be stricken down, it must clearly appear the statute violates the constitution. [Citation omitted.]

" ' "(2) When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. [Citations omitted.]

" ' "(3) A usurpation of powers exists when there is a significant interference by one department with operations of another department. [Citation omitted.]

" ' "(4) In determining whether or not a usurpation of powers exists a court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time." ' [Citations omitted.]" 274 Kan. at 186.

In this case, the essential nature of the power being exercised—sentencing of convicted criminals—is both legislative and judicial. The United States Supreme Court, in *Mistretta v. United States*, 488 U.S. 361, 390, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989), observed that "the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch." Our Supreme Court also has stated that the "legislature alone has the power to define offenses and affix punishment" and that "[c]ourts are empowered only to ascertain whether an offense has been committed and, if so, to assess punishment." *State v. Ponce*, 258 Kan. 708, 711, 907 P.2d 876 (1995); see *Beard*, 274 Kan. at 185.

The degree of control by the legislature over the courts under K.S.A. 2010 Supp. 38-2364 is considerable, since, as discussed above, Kansas courts have repeatedly found the statute leaves the sentencing judge in an EJJP case no discretion to modify an adult sentence upon a finding that a juvenile violated the conditions of his or her juvenile sentence. See *In re E.F.*, 41 Kan. App. 2d at 865; *State v. J.H.*, 40 Kan. App. 2d at 646-47; *State v. I.A.*, 2011 WL 3250584, at *6. '

However, the legislature has not entirely usurped the courts' discretion to decide the adult sentence under the EJJP. As J.D.H. concedes, the judge in EJJP cases is able to determine the conditional adult sentence at the time of the original sentencing. K.S.A. 2010 Supp. 38-2364(a) provides:

"(a) If an extended jurisdiction juvenile prosecution results in a guilty plea or finding of guilt, the court shall:

(1) Impose one or more juvenile sentences under K.S.A. 2010 Supp. 38-2361, and amendments thereto; and

(2) impose an adult criminal sentence, the execution of which shall be stayed on the condition that the juvenile offender not violate the provisions of the juvenile sentence and not commit a new offense."

Just as the Supreme Court found in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), the sentencing scheme in this case did not take away all judicial discretion in fixing the sentence because the court could sentence a defendant to a minimum of 5 years up to a maximum of 10 years; indeed, district courts in EJJP's have discretion at the outset to sentence juveniles to any adult sentence within the range allowed under the adult sentencing statutes. Therefore, although the degree of control by the legislature over the courts under K.S.A. 2010 Supp. 38-2364 is considerable, it is not complete.

This control over punishment of convicted criminals is well within the legislature's power. Although our Supreme Court has stated that "the sentencing function in a criminal case is considered a judicial function," it has also noted that "[e]qually clear is the legislature's exclusive role in providing, through our statutes, for the punishment of convicted criminals. The power of the legislature to specify the punishment for a crime is controlled only by

the Constitutions of the United States and the State of Kansas." *State v. Reed*, 248 Kan. 792, 798, 811 P.2d 1163 (1991).

To that end, Kansas courts previously have rejected separation of powers challenges to mandatory sentencing provisions that limit the sentencing discretion of district courts. *Reed*, 248 Kan. at 798-99; see, *e.g.*, *City of Junction City v. Griffin*, 227 Kan. 332, 338-39, 607 P.2d 459 (1980) (ordinance requiring mandatory jail sentence for prostitution offense upheld); *Freeman*, 223 Kan. at 370-71 (mandatory sentencing provisions for those convicted of certain crimes involving use of a firearm under K.S.A. 1977 Supp. 21-4618 upheld); *State v. Gibson*, 8 Kan. App. 2d 135, 137-38, 651 P.2d 949 (1982) (mandatory fine provision of K.S.A. 1980 Supp. 8-1909 [overweight truck] did not violate separation of powers). In *Freeman*, our Supreme Court quoted the Ninth Circuit to note that mandatory sentences " '[a]t worst . . . merely forbid[] in this kind of case and for good reason the discretionary granting of special benefits which Congress did not have to permit in the first place.' " 223 Kan. at 365. Furthermore, in holding a mandatory fine provision did not violate the separation of powers doctrine in *Gibson*, this court adhered to the principle of law that the legislature has the sole power to provide for the punishment of offenders. The court also quoted the Michigan Supreme Court for the proposition that:

" 'It is not essential to the validity of a penal statute that the court imposing the sentence be permitted to exercise discretion to some extent or within prescribed limitations. . . . The fact that the legislature in the instant case saw fit to prescribe the penalty and to make the imposition mandatory does not render the statute under which the defendant was prosecuted unconstitutional.' " *Gibson*, 8 Kan. App. 2d at 138 (quoting *People v. Wolfe*, 338 Mich. 525, 542, 61 N.W.2d 767 [1953]).

Thus, despite the significant encroachment on the judiciary's discretion in sentencing, the legislature has not exceeded its power in the EJJP sentencing scheme by imposing a mandatory adult sentence after a finding of a juvenile sentence violation.

Finally, the third and fourth factors for determining if a usurpation of powers exists—the objective sought to be attained by the legislature and the practical result—do not indicate a significant

interference amounting to a usurpation of powers here. As discussed above, this court has found that the EJJP operates as a last chance agreement for a juvenile offender who has failed in the juvenile system. *State v. I.A.*, 2011 WL 3250584, at *5-6. This interpretation implies that the legislative objective is to allow the judicial branch the opportunity to deal with the offender within the juvenile system before K.S.A. 2010 Supp. 38-2364(b) steps in to impose a mandatory adult sentence. This leeway does not indicate the legislature is significantly interfering with the judiciary.

Taken together, these factors do not point to a *significant* interference by the Kansas Legislature amounting to a usurpation of the powers of Kansas courts under the separation of powers doctrine. Although K.S.A. 2010 Supp. 38-2364 removes the district court's discretion to impose a lesser adult sentence on a juvenile after a violation of his or her juvenile sentence, Kansas courts have found this blending of the legislative duty to prescribe punishments with the judiciary's duty to sentence convicted offenders to be acceptable under the separation of powers doctrine, especially in cases involving mandatory sentencing statutes. Therefore, because there is a reasonable way to construe K.S.A. 2010 Supp. 38-2364 as constitutionally valid and all doubts are resolved in favor of its validity, we presume the statute is constitutional.

Affirmed.