NOT DESIGNATED FOR PUBLICATION

No. 112,328

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL PEREZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellant*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed September 18, 2015. Affirmed.


*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, Lawrence, for appellant.


*Edmond Brancart*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., BUSER, J. and WILLIAM R. MOTT, District Judge, assigned.


*Per Curiam*:  In this habeas corpus proceeding, Daniel Perez contends the district court committed reversible error when it summarily denied his K.S.A. 60-1507 motion. Perez claims his trial counsel was ineffective by failing to advance a duress or compulsion defense. Finding no reversible error, we affirm.


FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Perez of first-degree felony murder (K.S.A. 21-3401); criminal discharge of a firearm at an occupied dwelling (K.S.A. 21-4219), and conspiracy to

1

commit criminal discharge of a firearm at an occupied dwelling (K.S.A. 21-3302). On April 24, 2008, the district court imposed a sentence of life imprisonment for first-degree felony murder, 59 months' imprisonment for criminal discharge of a firearm at an occupied dwelling and 32 months' imprisonment for conspiracy to commit criminal discharge of a firearm at an occupied dwelling. The sentences were ordered to run concurrently.

Our Supreme Court detailed the facts underlying Perez's convictions in *State v. Perez*, 294 Kan. 38, 39-41, 261 P.3d 532 (2012):

"In the spring of 2007, rival street gangs Florencia and Familia Loca (FL) were engaged in a series of violent confrontations in Kansas City. Carlos 'Papa' Moreno was a leader of the Florencia gang. Valentino Hernandez, known as Listo, and Jos Franco, known as Filero, were two leaders of FL. Perez, born on August 17, 1990, and Luis Gonzalez, also a juvenile, were lower ranking 'soldiers' of FL.

"On April 1, 2007, Filero's house was the target of a street-side shooting. Filero believed that Florencia was responsible for the shooting and wanted revenge. Two days later, on April 3, 2007, Perez and Gonzalez went to Filero's house to check in with the gang leaders. When they arrived, Listo indicated they were being sent on 'a mission' to shoot up Moreno's house. Perez initially refused the mission, resulting in an argument with Listo. Filero then entered the room with a pistol-grip shotgun and told Gonzalez to do the shooting. Gonzalez responded that he was too small to handle the shotgun. Eventually Filero and Listo left the room. When they were alone, Perez told Gonzalez that he did not want to get into trouble with the gang leaders for failing to follow orders. Perez then informed Listo and Filero that he would complete the mission. Gonzalez also agreed to help.

"Perez, Gonzalez, and Filero went on a dry run of the shooting mission and Filero showed Perez and Gonzalez where Moreno lived. When they returned to Filero's house, Listo was wiping down a shotgun with oil in order to remove fingerprints. Perez put on black gloves and took the shotgun from Listo. About 8:30 p.m., Perez and Gonzalez drove to Moreno's house in Gonzalez' car. Gonzalez stopped the car in a nearby alley and Perez got out and walked toward Moreno's house. Gonzalez was unable to see

2

Moreno's house from the alley, but he heard four or five gunshots coming from the direction of the house. Perez then ran back to the car, threw the shotgun in the backseat, and jumped into the passenger seat. Perez and Gonzalez then left the alley and returned to Filero's house.

"Moreno later testified that on April 3, 2007, he was watching television in his bedroom when he heard several gunshots. He stated that he crawled out of the bedroom and picked up his 2-year-old niece, Yelena Guzman, who was playing in the front room near the door. Moreno noticed that Yelena was bleeding and he carried her toward the back of the house. Yelena later died of a gunshot wound to the head. Kansas City police officers recovered four shotgun shells and one shotgun slug at Moreno's house. Three of the shots had penetrated the front door.

"On July 19, 2007, the police interviewed Gonzalez and he implicated Perez in the shooting. Gonzalez later agreed to testify against Perez in exchange for being prosecuted as a juvenile for his involvement in the crimes.

"The State charged Perez with first-degree felony murder, criminal discharge of a firearm at an occupied dwelling, and conspiracy to commit criminal discharge of a firearm at an occupied dwelling. On September 11, 2007, the State moved to try Perez as an adult. After hearing the evidence and considering the factors enumerated in K.S.A. 38-2347, the district court authorized adult prosecution. Perez raised no procedural objections in district court to the State's motion for adult prosecution.

"At the jury trial, Gonzalez testified against Perez. Gonzalez described the events leading up to the shooting on April 3, 2007, and he testified that Perez intended to hit 'Papa' in the shooting. Cory Cisneros, another FL gang member, also testified that he was at Filero's house on April 3, 2007. Cisneros testified that he overheard Filero order Perez and Gonzalez to shoot Moreno's house. He testified that he saw Perez, Gonzalez, and Filero leave to do a dry run of the mission. Cisneros testified that later that evening he witnessed Perez and Gonzalez return from the shooting and overheard them say, 'we got 'em.' The State also introduced into evidence the transcripts of recorded telephone calls Perez made to his mother while he was in jail. During one telephone call, his mother asked Perez if he was guilty and he replied, 'of course, yes.' In another telephone call, his mother asked Perez if Gonzalez' story was accurate and he replied, 'more or less.'

"Perez did not testify at trial but his defense was that he was not the shooter and that he was being set up to take the fall for higher ranking gang members, Filero and Listo. Perez called three witnesses who testified that Perez was trying to distance himself

3

from gang activity. Perez challenged Gonzalez' credibility and pointed out his testimony was in exchange for a favorable plea agreement."

On direct appeal, Perez challenged his convictions on numerous grounds. Finding no reversible error, our Supreme Court affirmed the jury's verdicts. 294 Kan. at 48-49. Almost 1 year later, on March 12, 2013, Perez filed the pro se K.S.A. 60-1507 motion that is the subject of this appeal.

Relevant to this appeal, in his K.S.A. 60-1507 motion Perez alleged his trial attorney provided constitutionally deficient representation by failing to present a "duress defense." Perez contended that duress was a viable defense because although he was attempting to "part ways with this gang setting and affiliation" and "even argued . . . that he wanted **NO** part in committing such crime[s]," the adult gang leaders forced him to comply with their instructions. According to Perez, he was "just a [scared] child at the time" who did not want a "'[v]iolation,'" *i.e.*, a punishment for noncompliance which consists of "'a punch in the mouth all the way to death.'" Perez argued that his attorney severely prejudiced his defense by neglecting to inform the jury that his actions were guided by threats and coercion.

In response, the State advocated for a summary denial of Perez' motion. The State contended that Perez' attorney did not provide deficient performance because "the defense of compulsion or duress" was not available to Perez. According to the State, Perez could not claim such a defense because he had several opportunities to avoid committing the crimes without undue exposure to death or serious bodily harm and such a defense would have conflicted with his defense at trial that he did not commit the shooting.

On July 2, 2013, the district court summarily denied Perez' motion, finding that he had "failed to cite or accurately state any basis for relief or any good cause showing why

4

he [was] being held unlawfully." With respect to Perez' arguments regarding his counsel's failure to present a duress defense, the district court explained:

> "[Perez]'s final contention is that trial counsel erred when he failed to use the duress defense. Perez spends a considerable amount of time throughout his entire motion discussing the idea that he felt compelled or forced to commit the crimes or he would face serious consequences from adult gang leaders. K.S.A. 21-5206 details this defense and begins by stating that it can be utilized in crimes other than murder or voluntary manslaughter. Perez would not have been eligible to use this theory in the most serious charge herein. Kansas cases have further interpreted the statute and have held that the defense cannot be used by a party who had a reasonable opportunity to escape the compulsion or avoid doing the act without being exposed to the serious or fatal harm. A threat of future injury does not suffice. [Citation omitted.] As is reflected in the State's response, the facts established in the trial do not meet this standard. [Perez] had a viable opportunity to avoid the shooting at the time he left the car driving by the juvenile accomplice and walked to the residence to complete the shooting. In addition, his defense was that he '. . . was not at the scene of the shooting.' [Citation omitted.] The denial of involvement in the shooting is contrary to the compulsion defense. The allegations in this aspect of [Perez]'s pro se motion are insufficient."

Perez filed a timely appeal.

FAILURE TO PRESENT A COMPULSION DEFENSE

On appeal, Perez candidly concedes that three of the claims he raised in his K.S.A. 60-1507 motion are no longer viable. He contends, however, that his fourth claim—a rather narrowly drawn complaint of ineffective assistance of counsel is meritorious. In particular, Perez concedes that his trial counsel was statutorily prohibited from raising the defense of compulsion, codified at K.S.A. 21-3209, as an affirmative defense to the crime of murder. Yet, Perez insists that a compulsion defense was fully available to him on the remaining lesser felony charges, criminal discharge of a firearm at an occupied dwelling

5

and conspiracy to commit criminal discharge of a firearm at an occupied dwelling. As a result, in this appeal, Perez only seeks a reversal and remand for a new trial involving these two lesser charges.

At the outset, we should also note that Perez focuses upon the merits of his K.S.A. 60-1507 motion alleging his attorney's ineffectiveness, and he does not challenge the district court's determination that it was unnecessary to hold an evidentiary hearing. Consequently, the propriety of the district court's decision not to conduct an evidentiary hearing, but to summarily rule on the motion, is not before us. See *State v. Boleyn*, 297 Kan 610, 633, 303 P.3d 680 (2013) (issues not briefed by the appellant are deemed waived and abandoned).

When, as in this case, the district court summarily denies a movant's K.S.A. 60-1507 motion, we conduct a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. See *Edgar v. State*, 294 Kan. 828, 836-37, 283 P.3d 152 (2012). For Perez to prevail on an ineffective assistance of counsel claim, he must satisfy the constitutional standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). See *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011).

Under the *Strickland* test, the movant must establish (1) that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution, and (2) counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *Miller v. State*, 298 Kan. 921, 929-35, 318 P.3d 155 (2014).

6

On appeal, Perez, who did not testify at trial, contends "the testimony of Luis Gonzales and Corey Cisneros . . . provide more than an adequate factual basis of a compulsion defense," because their testimony "supports a reasonable conclusion that had [he] failed to follow the orders of Listo and Filero, he would have been physically harmed or killed under the rules of the gang."

We agree the trial testimony showed that Perez was a soldier in the Familia Loca gang, he was familiar with the gang's violent proclivities and he understood the gang's procedures to enforce discipline upon its members, including the use of physical violence. For example, to even join the Familia Loca gang, a prospective member was required to be beaten by three other gang members in an initiation ritual known as being "jumped in" to the gang. Soldiers in the gang, like Perez, were obligated to follow the rules of the gang's leaders or be disciplined with a "violation" which could involve a range of discipline, from a punch in the mouth to the most serious consequence, death.

Rather than show the predicate factual basis for a compulsion defense under K.S.A. 21-3209, however, we are persuaded this evidence established that the compulsion defense was not available to Perez.

At the time Perez committed his offenses, K.S.A. 21-3209 provided:

"(1) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct.

"(2) The defense provided by this section is *not available to one who willfully or wantonly places himself in a situation in which it is probable that he will be subjected to compulsion or threat*." (Emphasis added.)

7

In considering this statute, our Supreme Court has stated that under K.S.A. 21-3209(2), "'*a person who connects himself or herself with criminal activities or is otherwise indifferent to known risks cannot use compulsion as a defense.*' (Emphasis added.)" *State v. Littlejohn*, 298 Kan. 632, 652, 316 P.3d 136 (2014) (quoting *State v. Scott*, 250 Kan. 350, Syl. ¶ 6, 827 P.2d 733 [1992]).

As the State points out, under K.S.A. 21-3209(2), Perez may not, "invite the compulsion, if it is found to exist, and then be heard to complain of it." We agree. And Perez does not advance any arguments to refute the notion that he willfully or wantonly placed himself in a situation where it was probable he would be subjected to compulsion or threat.

Based on the facts as set out in Perez' motion, our Supreme Court's factual rendition, and the record on appeal, we conclude, as a matter of law, that a compulsion defense was not available to Perez with regard to the two lesser felony charges because he willfully or wantonly associated himself with criminal activities by being a member of the Familia Loca gang. See K.S.A. 21-3209(2); *Scott*, 250 Kan. 350, Syl. ¶ 6. As a result, Perez' counsel was not ineffective for failing to present a compulsion defense.

Additionally, even if K.S.A. 21-3209(2) did not excuse Perez' attorney from presenting a compulsion defense, we find there was substantial competent evidence to support the district court's finding that Perez "had a viable opportunity to avoid the shooting at the time he left the car driven by the juvenile accomplice and walked to the residence to complete the shooting." This finding is important because our Supreme Court has stated: "'The doctrine of compulsion cannot be invoked as an excuse by one who had a reasonable opportunity to escape the compulsion or avoid doing the act without undue exposure to death or serious bodily harm. A threat of future injury is not enough.'" *State v. Baker*, 287 Kan. 345, 352, 197 P.3d 421 (2008). As a result, even

without the applicability of K.S.A. 21-3209(2), the defense of compulsion was not available under the facts of this case.

Although we do not find that trial counsel was ineffective, for the sake of completeness, we have also considered whether Perez has shown prejudice due to his attorney's failure to present a compulsion defense with reference to the two lesser felonies. To establish prejudice, the movant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *Miller*, 298 Kan. at 934.

As noted earlier, Perez' defense at trial was that he was not the shooter and he was being set up to take the fall for higher ranking members of the Familia Loca gang. If proven, this defense would have exonerated Perez of all three crimes. But, as Perez concedes on appeal, if he had employed the compulsion defense at trial, he would not have been able to claim compulsion with regard to the most serious of the three charges—felony murder.

Assuming for purposes of argument that the district court allowed Perez to submit a jury instruction on compulsion with regard to the two lesser felonies and argue it to the jury, Perez' counsel would have been in the unenviable position of arguing inconsistent theories of defense. In other words, with regard to the murder charge, defense counsel would have argued that Perez was not the shooter but with regard to the lesser felonies, defense counsel would have argued that Perez was the shooter but that he shot Yelena as a consequence of compulsion.

It is an understatement to observe there is no reasonable possibility that presentation of these two inconsistent theories of defense would have resulted in a different jury outcome. See 298 Kan. at 934. In addition to Perez failing to show that his

trial counsel was ineffective, he has also failed to prove any prejudice. See 298 Kan. at 934-35. Accordingly, we hold the district court did not err when it summarily denied Perez' K.S.A. 60-1507 motion.

Affirmed.