(324 P.3d 1134)
No. 108,902

STATE OF KANSAS, *Appellant/Cross-appellee*, v. SHERRY K. HERMAN, *Appellee/Cross-appellant*.

Opinion filed May 16, 2014.

*Michael C. Duma* and *Christopher Mann*, assistant district attorneys, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*Edward C. Gillette* and *Grant M. Reichert*, of Gillette Law Firm, P.A., of Mission, for appellee/cross-appellant.

Before PIERRON, P.J., POWELL, J., and LARSON, S.J.

LARSON, J.: The State of Kansas appeals on a question reserved the district court's determination that Sherry Herman's 2004 conviction under Mo. Rev. Stat. (2003) § 577.010 for driving while intoxicated could not be counted as a prior conviction under Kansas law in determining the penalty for Herman's current conviction for driving under the influence of alcohol (DUI) under K.S.A. 2010 Supp. 8-1567.

Herman cross-appeals the district court's ruling on the suppression motion she filed, which was denied. She also argues the district court erred in refusing to apply the "look-back" provisions of K.S.A. 2011 Supp. 8-1567(j)(3) to her case and, therefore, improperly included a 1991 diversion for DUI in the sentence/penalty determination for her current DUI conviction.

We deny the State's appeal because the question reserved is not an issue of statewide interest important to the correct and uniform administration of criminal law in Kansas.

We accept jurisdiction of Herman's cross-appeal but hold probable cause existed to arrest Herman for violation of K.S.A. 2010 Supp. 8-1567. And, the district court correctly refused to give retroactive effect to the provisions of K.S.A. 2011 Supp. 8-1567(j)(3) limiting prior convictions to those occurring on or after July 1, 2001.

## FACTUAL BACKGROUND AND LEGAL PROCEEDINGS

At approximately 1:30 a.m. on March 11, 2011, Kansas City Police Officer Kenneth Garrett observed a vehicle speeding on Kaw Drive. Pulling behind the vehicle, Garrett clocked the vehicle moving at 62 mph in a 45-mph zone. He also observed the vehicle drift from side to side within its lane, although the vehicle did not leave

the lane of traffic. Garrett activated his emergency lights to stop the vehicle. The vehicle traveled an additional 2 or 3 blocks before stopping, but Garrett attributed the driver's delay as an attempt to find a safe place to stop.

After the vehicle stopped, Garrett contacted the driver, later identified as Herman; he noted that Herman's eyes were glazed, bloodshot, and watery. When asked for her license and registration, Herman acted slowly and uncertainly. Garrett asked Herman whether she had been drinking and she admitted that she had consumed one drink. Garrett detected a strong odor of alcohol from Herman's person when she spoke. Herman's speech was thick and slurred.

Garrett requested Herman to exit her car. She complied with difficulty. Garrett performed the horizontal gaze nystagmus (HGN) test on Herman. Garrett asked Herman to perform the one-leg-stand test. Herman declined, stating that she would be unable to perform the test because she was not coordinated. Garrett decided not to pursue the walk-and-turn test because there was no good line to use, Herman was wearing high heels, and she claimed to lack coordination. Garrett then asked Herman to submit to a preliminary breath test (PBT), advising her that she could refuse but would then be subject to a fine and arrest. Herman took the PBT. The results indicated a breath-alcohol concentration above .08. Garrett arrested Herman for DUI.

Before driving to the jail, Garrett went to Herman's vehicle to retrieve her purse and discovered a QuikTrip cup containing a mixed drink and a half-full bottle of vodka. Garrett transported Herman to the Wyandotte County Jail where he reviewed the implied consent advisory with her, conducted the 20-minute deprivation period, and properly administered the Intoxilyzer breath test. The test result demonstrated a breath-alcohol concentration of .128 grams of alcohol per 210 liters of breath.

The State charged Herman with DUI (fourth or subsequent, nongrid, nonperson felony), transportation of an open container, and speeding.

Herman moved to suppress the results of both the PBT and the Intoxilyzer evidentiary breath test. After a hearing, the district

court suppressed the PBT results but found sufficient evidence to support probable cause to arrest for DUI and, therefore, refused to suppress the evidentiary breath test results.

The case went to a bench trial on the evidence presented at the preliminary hearing, the videos of the traffic stop, and the evidentiary breath test at the jail. The district court convicted Herman of all three charges.

At sentencing on October 11, 2012, the State presented evidence of three prior alcohol-related convictions; a 1991 diversion from a Kansas DUI charge (No. 91 TR 1118), a 1996 municipal court of Kansas City, Kansas, conviction of DUI citation (No. 2091621), and a 2004 State of Missouri conviction for driving while intoxicated in violation of Mo. Rev. Stat. § 577.010 (No. 03 CR 84580). Herman challenged by prior motion, responded to by the State, the inclusion of these three prior convictions as a part of her criminal history.

The district court excluded the 1996 municipal court conviction because Herman was clearly not represented by legal counsel during the legal proceedings. The court also excluded the 2004 Missouri conviction for driving while intoxicated, holding Mo. Rev. Stat. § 577.010 was not a comparable offense to the Kansas DUI statute, K.S.A. 2010 Supp. 8-1567. The court rejected Herman's request for retroactive application of K.S.A. 2011 Supp. 8-1567(j)(3) and included the 1991 DUI diversion in her criminal history "prior convictions" calculation.

Accordingly, after excluding the 1996 and 2004 convictions, the district court concluded that Herman's current DUI conviction should be counted as her second, a class A, nonperson misdemeanor under K.S.A. 2010 Supp. 8-1567(e). The court imposed 12 months' probation, including 20 days' jail time and a $1,500 fine. Herman was ordered to pay a $200 fine for transporting an open container and a $100 fine for speeding.

On October 22, 2012, the State filed a notice of appeal based on a question reserved pursuant to K.S.A. 2013 Supp. 22-3602(b)(3). Previously, upon learning of the court's ruling on the prior convictions issue, the State informed the court and the defendant that it intended to appeal.

The State's notice of appeal also states it appeals "from a final order of the lower court made on October 11, 2012, granting the defendant's motion objecting to the use of a prior Missouri DUI conviction in determining whether the defendant would be sentenced as a first, second, third, fourth or subsequent offender under K.S.A. 8-1567." This ruling is in effect the same legal question as that appealed from by the State as a question reserved under K.S.A. 2013 Supp. 22-3602(b)(3) and will be considered by our panel as such.

On November 22, 2012, Herman filed a notice of cross-appeal, stating it was filed "pursuant to Kan. Sup. Ct. Rule 2.02; K.S.A. 22-3606; & K.S.A. 60-2103(h)." The notice specifically stated the defendant cross-appeals the following issues:

"(1) [T]he failure to sustain Defendant's objections to prior convictions occurring prior to July 1, 2001 for use in sentencing; (2) the denial of Defendant's motion to suppress based on lack of probable cause to arrest; (3) the denial of Defendant's motion in limine to prohibit admission of evidential breath test and the consideration of such evidence; and (4) the conviction of Defendant."

### ANALYSIS OF THE STATE'S APPEAL

The State's suggested issue on appeal is:

*The district court committed error when it refused to count Herman's prior Missouri conviction for violation of Mo. Rev. Stat. § 577.010(a) in determining whether Herman was a first, second, third, fourth, or subsequent offender under K.S.A. 2010 Supp. 8-1567(o)(1) and (2).*

Because of the deletion in 2012 of the precise statutory language upon which this question reserved appeal is predicated, the issue we must first consider is:

*Is the answer to a question reserved still a matter of statewide interest important to the correct and uniform administration of criminal law in Kansas when it (1) would be based on language that has been repealed; (2) would be unlikely to govern any currently pending matter; (3) would, in effect, be an advisory opinion; (4) would only be of academic interest; and (5) would not provide helpful precedent?*

Our issues on appeal involve jurisdiction and statutory construction. Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *State v. Berreth*, 294 Kan. 98, 109, 273 P.3d 752 (2012). Likewise, interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011).

The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if it is taken in the manner prescribed by statute. *State v. J.D.H.*, 48 Kan. App. 2d 454, 458, 294 P.3d 343, *rev. denied* 297 Kan. 1251 (2013). An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, it is the duty of the appellate court to dismiss the appeal. 48 Kan. App. 2d at 458.

The State's authority to appeal in criminal cases is limited by statute. An appeal to this court may be taken by the prosecution as a matter of right after a final judgment in the district court in the following cases:

"(1) From an order dismissing a complaint, information or indictment;
"(2) from an order arresting judgment;
"(3) upon a question reserved by the prosecution; or
"(4) upon an order granting a new trial in any case involving a class A or B felony or for crimes committed on or after July 1, 1993, in any case involving an off-grid crime." K.S.A. 2013 Supp. 22-3602(b).

We do not reach the issue of whether the State could have appealed under K.S.A. 22-3504 as it was not raised on appeal.

We are taught by *State v. Tremble*, 279 Kan. 391, Syl. ¶ 1, 109 P.3d 1188 (2005), that

"[q]uestions reserved by the State in a criminal prosecution, under K.S.A. 2003 Supp. 22-3602(b)(3), will not be entertained on appeal merely to demonstrate whether error has been committed by the trial court. Generally, this court has accepted appeals on questions reserved by the State where the appeals involve issues of statewide interest important to the correct and uniform administration of the criminal law and the interpretation of statutes. We have uniformly declined to entertain questions reserved in which the resolution of the question would not provide helpful precedent."

Included in the instructive Supreme Court case of *Berreth*, which commented in detail on numerous cases where an appeal was sought on a question reserved, is the following: "To state it clearly and simply, an appellate court's answer to a State's question reserved has no effect on the criminal defendant in the underlying case. [Citations omitted.]" 294 Kan. at 123. *Berreth* further sets forth the rules that the State cannot expand its elected statutory basis for the appeal and the appellate court cannot *sua sponte* select the jurisdictional basis for an appeal by the State. 294 Kan. at 116-17.

With the rules for appeals by the State set forth, we turn to the State's arguments as to the exclusion of Herman's prior Missouri conviction in determining the conviction level of her current DUI conviction.

The 2004 Missouri conviction was for "operat[ing] a motor vehicle in an intoxicated or drugged condition." Mo. Rev. Stat. § 577.010. The State argues this conviction should have been determined to be a prior conviction and used to determine the conviction level and penalty of Herman's current Kansas DUI offense.

In Kansas, the State may obtain a DUI conviction mainly by one of two methods (others do exist but are not applicable here): (1) establish the driver operated or attempted to operate a motor vehicle when the driver's blood- or breath-alcohol concentration equals or exceeds .08, or (2) establish that the driver operated or attempted to operate a motor vehicle under the influence of alcohol or drugs to an extent that the person was incapable of safely operating the vehicle. K.S.A. 2010 Supp. 8-1567(a)(1), (3).

K.S.A. 2010 Supp. 8-1567 not only establishes the elements of the Kansas DUI offense but also sets the penalties for the offense. Based on the number of previous offenses, the statute provides a graduated penalty scheme. See K.S.A. 2010 Supp. 8-1567(d)-(g). For purposes of this appeal, K.S.A. 2010 Supp. 8-1567(o) defines what convictions are to be used to assess the proper penalty.

"(o) For the purpose of determining whether a conviction is a first, second, third, fourth or subsequent conviction in sentencing under this section:

(1) 'Conviction' includes being convicted of a violation of this section or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging a violation of this section;

(2) 'conviction' includes being convicted of a violation of a law of another state or an ordinance of any city, or resolution of any county, which prohibits the acts that this section prohibits or entering into a diversion agreement in lieu of further criminal proceedings in a case alleging a violation of such law, ordinance or resolution;

(3) any convictions occurring during a person's lifetime shall be taken into account when determining the sentence to be imposed for a first, second, third, fourth or subsequent offender." K.S.A. 2010 Supp. 8-1567(o)(1)-(3).

K.S.A. 2011 Supp. 8-1567(j)(2) contains the same language as K.S.A. 2010 Supp. 8-1567(o)(2), with " 'conviction' includ[ing] being convicted of a violation of a law of another state . . . which prohibits the acts that this section prohibits . . . ."

The language *was* changed in K.S.A. 2011 Supp. 8-1567(j)(3) to delete the prior language in K.S.A. 2010 Supp. 8-1567(o)(3) that "any conviction occurring during a person's lifetime shall be taken into account when determining the sentence to be imposed . . ." to the 2011 provision, which states: "(3) only convictions occurring on or after July 1, 2001, shall be taken into account when determining the sentence to be imposed for a first, second, third, fourth or subsequent offender." K.S.A. 2011 Supp. 8-1567(j)(3).

While the language in 2010 and 2011 remains the same as to what constitutes an out-of-state offender, these provisions were completely abrogated and deleted by the 2012 Kansas Legislature in the following manner:

"~~(j)~~ (i) For the purpose of determining whether a conviction is a first, second, third, fourth or subsequent conviction in sentencing under this section:

~~(1) 'Conviction' includes being convicted of a violation of this section or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging a violation of this section;~~

~~(2) 'conviction' includes being convicted of a violation of a law of another state or an ordinance of any city, or resolution of any county, which prohibits the acts that this section prohibits or entering into a diversion agreement in lieu of further criminal proceedings in a case alleging a violation of such law, ordinance or resolution;~~

~~(3) only convictions occurring on or after July 1, 2001, shall be taken into account when determining the sentence to be imposed for a first, second, third, fourth or subsequent offender;~~

*(1) Convictions for a violation of this section, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that this section prohibits, or entering into a diversion agreement in lieu of further criminal pro-*

*ceedings on a complaint alleging any such violations, shall be taken into account, but only convictions or diversions occurring on or after July 1, 2001. Nothing in this provision shall be construed as preventing any court from considering any convictions or diversions occurring during the person's lifetime in determining the sentence to be imposed within the limits provided for a first, second, third, fourth or subsequent offense;*

*(2) any convictions for a violation of the following sections occurring during a person's lifetime shall be taken into account: (A) Refusing to submit to a test to determine the presence of alcohol or drugs, section 2, and amendments thereto; (B) driving a commercial motor vehicle under the influence, K.S.A. 8-2,144, and amendments thereto; (c) operating a vessel under the influence of alcohol or drugs, K.S.A. 32-1131, and amendments thereto; (D) involuntary manslaughter while driving under the influence of alcohol or drugs, K.S.A. 21-3442, prior to its repeal, or subsection (a)(3) of K.S.A. 2011 Supp. 21-5405, and amendments thereto; and (E) aggravated vehicular homicide, K.S.A. 21-3405a, prior to its repeal, or vehicular battery, K.S.A. 21-3405b, prior to its repeal, if the crime was committed while committing a violation of K.S.A. 8-1567, and amendments thereto;*

*(3) 'conviction' includes: (A) Entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging a violation of a crime described in subsection (i)(2); (B) conviction of a violation of an ordinance of a city in this state, a resolution of a county in this state or any law of another state which would constitute a crime described in subsection (i)(1) or (i)(2); and (C) receiving punishment under the uniform code of military justice or Kansas code of military justice for an act which was committed on a military reservation and which would constitute a crime described in subsection (i)(1) or (i)(2) if committed off a military reservation in this state;*

*(4) multiple convictions of any crime described in subsection (i)(1) or (i)(2) arising from the same arrest shall only be counted as one conviction."* L. 2012, ch. 172, sec. 19; see K.S.A. 2012 Supp. 8-1567(i)(1)-(4).

The 2013 Kansas Legislature made no change in the above provision except to add the following language to K.S.A. 2013 Supp. 8-1567(i)(2): *"(E) aggravated battery as described in subsection (b)(3) of K.S.A. 2012 Supp. 21-5413 and amendments thereto,"* and renumber the prior subsection (E) to (F). L. 2013, ch. 122, sec. 6.

It is clear that an opinion by this panel at this time on the legal effect of K.S.A. 2010 Supp. 8-1567(o)(2) would not have any binding precedential effect on the different language as to what constitutes a "conviction" from another state as is now set forth in K.S.A. 2013 Supp. 8-1567(i)(3).

Based on the rules previously set forth and specifically enumerated in *Berreth,* an answer by this panel to the question reserved would have no effect on Herman's conviction and sentence.

And, although the applicable 2012 amendment was in existence when the State's brief was filed on February 14, 2013, there was no showing that the requested opinion would govern any then existing case or cases.

Any opinion that we might render on the question reserved might be of academic interest but would be advisory only. Our long-time general rule is that we do not render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012).

With the question reserved presented to us no longer of statewide interest because of the amended provisions of K.S.A. 2012 Supp. 8-1567(i)(3), the State's appeal must be dismissed. See *Berreth*, 294 Kan. at 122-23 (relying in part on *In re E.F.*, 41 Kan. App. 2d 860, 861-62, 205 P.3d 787 [2009]).

The holding we reach on this issue does not suggest that difficult legal questions do not exist as to what convictions from another state, ordinances of a city, or resolutions of a county count as convictions in a Kansas DUI prosecution of a violation under the applicable version of K.S.A. 8-1567. This is an area which would benefit from legislative clarification.

## ANALYSIS OF HERMAN'S CROSS-APPEAL

*Does jurisdiction exist to consider Herman's cross-appeal?*

The State filed its notice of appeal on October 22, 2012, within 14 days of sentencing on October 11, 2012. Herman did not file a notice of appeal within 14 days of sentencing. But, she filed her notice of cross-appeal within 21 days of the State's filing.

Because the Kansas Code of Criminal Procedure does not provide a precise mechanism for cross-appeals in criminal cases, our court issued a show cause order on November 28, 2012, as to why the cross-appeal should not be dismissed. Both parties responded. We provisionally retained jurisdiction, ordering the parties to brief the jurisdictional question.

As was earlier stated, the right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to limited exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *J.D.H.*, 48 Kan. App. 2d at 458.

An appellate court may not properly exercise jurisdiction over an appeal that has not been taken in conformity with that statutory grant. An appellate court has the duty to question its jurisdiction on its own initiative when it appears to lack jurisdiction. *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008).

Appellate jurisdiction in criminal cases is granted by K.S.A. 22-3601 *et seq.*

K.S.A. 2013 Supp. 22-3602(a) provides:

"[A]n appeal to the appellate court having jurisdiction of the appeal may be taken by the defendant as a matter of right from any judgment against the defendant in the district court and upon appeal any decision of the district court or intermediate court made in the progress of the case may be reviewed."

However, K.S.A. 2013 Supp. 22-3608(c) states: "For crimes committed on or after July 1, 1993, the defendant shall have 14 days after the judgment of the district court to appeal."

K.S.A. 22-3606 provides: "Except as otherwise provided by statute or rule of the supreme court, the statutes and rules governing procedure on appeals to an appellate court in civil cases shall apply to and govern appeals to an appellate court in criminal cases."

There *is* a specific provision in K.S.A. 2013 Supp. 60-2103(h) governing cross-appeals which reads: "When notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which such appellee complains, the appellee shall, within 21 days after the notice of appeal has been served on such appellee and filed with the clerk of the trial court, give notice of such appellee's cross-appeal."

The interaction of these various provisions present a question of statutory interpretation over which an appellate court has unlimited review. *Dale*, 293 Kan. at 662.

The State concedes there is no statute or Supreme Court rule that specifically addresses a criminal defendant's right to cross-appeal. But, the State contends the requirement that the criminal defendant must appeal within 14 days under K.S.A. 2013 Supp. 22-3608(c) controls over allowing a defendant to cross-appeal by applying civil procedure rules as specified by K.S.A. 22-3606.

But, as Herman has argued, Kansas courts have implicitly recognized the right to cross-appeal in criminal proceedings by noting

a defendant's failure to take a cross-appeal of an issue adverse to that party. See *State v. Diaz-Ruiz*, 42 Kan. App. 2d 325, 330, 211 P.3d 836 (2009) ("Preliminarily, we note that neither defendant cross-appealed the district court's conclusion that the initial stop was justified based on [trooper's] concerns that the defendants' ladder was not properly secured. Thus, that issue is not before us on appeal."); *State v. Rapp*, 26 Kan. App. 2d 595, 597, 992 P.2d 236 (1999) ("Unfortunately, for the State, no cross-appeal has been filed, and we are disinclined to consider Rapp's sentence to be illegal."), *rev. denied* 269 Kan. 939 (2000).

The use of the term "cross-appeal," however, does not necessarily require the application of K.S.A. 2013 Supp. 60-2103(h). The reference to cross-appeal in these cases may only suggest that the defendant could have filed a separate direct appeal from sentencing but failed to do so. See *State v. Hess*, 180 Kan. 472, 478, 304 P.2d 474 (1956) (" 'This may have merit for the criminal code speaks only of appeals and does not mention cross-appeals. Let us assume that the State's position is correct.' "). Nevertheless, a few unpublished decisions of this court have actually cited to K.S.A. 60-2103(h) in a criminal proceeding, though it is doubtful that the jurisdictional issue was properly presented to the court in these cases. See *State v. McMackin*, No. 109,022, 2013 WL 3970210, at *4 (Kan. App. 2013) (unpublished opinion), *rev. denied* 298 Kan. 1206 (2014); *State v. Lornes*, No. 103,031, 2011 WL 4716338, at *5 (Kan. App. 2011) (unpublished opinion).

With appellate rights being strictly statutory, decisions of other jurisdictions are of questionable value. But, *Byndom v. State*, 344 Ark. 391, 404, 39 S.W.3d 781 (2001), recognized the use of civil procedure rules to govern cross-appeals in criminal cases even though criminal procedure rules did not authorize a cross-appeal. Decisions from Florida, Georgia, Michigan, and Wisconsin are similar, but in *People v. Goodfriend*, 100 A.D.2d 781, 782, 474 N.Y.S.2d 65 (1984), New York refused to consider a criminal defendant's arguments because the appeals statute provided no mechanism for a cross-appeal.

It would seem that the right to cross-appeal is a part of the general statutory right of appeal in both civil and criminal cases.

But there remains a question as to the time frame or procedure under which a cross-appeal must be exercised. This question is best resolved by applying K.S.A. 22-3606 which incorporates the rules of civil procedure into the criminal appellate procedure. Our Supreme Court referenced other portions of K.S.A. 60-2103 in criminal proceedings under the authority of K.S.A. 22-3606. See *State v. Long*, 294 Kan. 939, 940, 281 P.3d 176 (2012) (referencing K.S.A. 60-2103[b] for content of notice of appeal in a criminal proceeding); *Berreth*, 294 Kan. at 127-28 (same). It is logical to us that the 21-day time within which a cross-appeal must be filed under K.S.A. 2013 Supp. 60-2103(h) should be applied in our case.

Despite the State's argument to the contrary, the reasons supporting additional time to file a cross-appeal are equally applicable to both civil and criminal appeals. Although the prosecutor in our case had stated the intention to appeal on a question reserved, Herman may have been willing to accept the district court's ruling and decided that economics did not justify an appeal. But, once the State's appeal was filed, Herman was faced with defending the State's appeal, and the filing of a cross-appeal to challenge adverse rulings in the district court became the obvious procedure to follow.

We hold the provisions of K.S.A. 22-3606 authorize a criminal defendant facing an appeal by the State to file a cross-appeal as allowed under K.S.A. 2013 Supp. 60-2103(h). Herman's cross-appeal filed within 21 days of the State's notice of appeal provides us with jurisdiction over the cross-appeal.

We further note that K.S.A. 2013 Supp. 22-3602(c) states: "Procedures for appeals by the prosecution enumerated in subsection (b) shall be as provided in supreme court rules." A subsection (b) appeal is exactly what we are considering in this case. However, our search of the Supreme Court rules has not revealed the existence of any such rules, nor have any been pointed out to us by counsel. The absence of any such rules suggested by subsection (c) does not have any effect on the decision made above.

With jurisdiction established, we reach and consider the two issues Herman raises on her cross-appeal.

*Did the district court err in refusing to suppress the results of Herman's Intoxilyzer test because Officer Garrett lacked probable cause to arrest her for DUI?*

Herman contends the district court committed reversible error in refusing to grant her motion to suppress the evidentiary breath test results. She argues that without the preliminary breath test results, Officer Garrett lacked probable cause to arrest her for DUI.

Appellate review of the district court's ruling on a motion to suppress is bifurcated. The district court's findings are extended deference and reversed only when they are not supported by substantial competent evidence. The ultimate legal conclusion regarding suppression based on those facts is subject to unlimited review. *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013).

The facts supporting the probable cause determination are based on the testimony of Garrett and the in-car video of the traffic stop. As a result, there is little dispute regarding the underlying facts. Herman was stopped for speeding. When Garrett approached the vehicle, he noted Herman's eyes were glazed, bloodshot, and watery. When Herman spoke, her speech was thick and slurred. Her movements were slow and uncertain while she sought to produce her license and proof of insurance. Garrett detected a strong odor of alcohol coming from her person. Herman admitted to having one drink. When asked, Herman refused the one field sobriety test Garrett offered, claiming she was not coordinated. Garrett did not pursue the walk-and-turn test because Herman was wearing high heels and there was no good line to use. Garrett requested Herman to submit to a preliminary breath test, and Herman complied.

On appeal, Herman cites *Sloop v. Kansas Department of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012), and *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 172 P.3d 1205 (2007), *rev. denied* 286 Kan. 1176 (2008), as dispositive of the probable cause determination in this case. Both are distinguishable from our case.

In *Sloop*, the court noted that the probable cause determination occurs at the time of arrest. Sloop was stopped for a tag light violation, not a driving violation such as speeding. As the officer fol-

lowed Sloop for 8 or 10 blocks, Sloop committed no traffic violations. Sloop did not slur his speech, did not fumble for his license, and did not have difficulty exiting his vehicle. The court refused to consider the results of the field sobriety tests because they occurred after the arrest. 296 Kan. at 23.

Similarly, in *Wonderly*, the field sobriety tests were not conducted until after the arrest. Prior to the arrest, the officer had information from an identified caller that Wonderly's truck was "swerving, spinning its tires, and traveling at a high rate of speed." 38 Kan. App. 2d at 799. But when the officer pulled behind the identified truck and followed it for 3 minutes, he observed no traffic infractions. Wonderly did not fumble for his license and did not stumble when exiting his truck. Wonderly's speech was not slurred. This court concluded that these circumstances did not constitute probable cause to arrest for DUI and noted that the officer apparently believed further information was necessary because he testified that he relied on the circumstances at the stop and Wonderly's performance on the sobriety tests at the sheriff's department to form probable cause to request an evidentiary breath test. 38 Kan. App. 2d at 808.

The *Sloop* opinion, 296 Kan. at 20, quotes from *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 (2011), for our definition of probable cause:

" 'Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. [Citation omitted.] Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. [Citation omitted.] Probable cause is determined by evaluating the totality of the circumstances. [Citation omitted.] As in other totality of the circumstance tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other. [Citations omitted.]' "

The facts of our case are more closely analogized to *State v. Huff*, 33 Kan. App. 2d 942, 111 P.3d 659 (2005), which sustained a conviction (requiring proof beyond a reasonable doubt) for DUI without breath test results. The facts reported in *Huff* involved a sheriff's deputy observing Huff's vehicle traveling 77 mph in a 55-

mph zone and driving onto the shoulder twice. The deputy noted a strong odor of alcohol from Huff when he contacted him. Huff refused to look at the deputy, and the deputy had difficulty understanding Huff. Huff spoke with slurred speech. Huff had bloodshot eyes and fumbled to produce his driver's license. Huff refused to answer when the deputy asked if he had been drinking. Huff refused to submit to an HGN test and was not asked to perform any other field sobriety tests. The deputy did acknowledge that Huff had no difficulty exiting his vehicle or walking to the patrol car after being handcuffed.

In response to Huff's challenge to the sufficiency of the evidence supporting his conviction for DUI, this court stated: "Viewed in a light most favorable to the State, Huff's speeding and driving off the roadway, his slurred speech, bloodshot eyes, fumbling to find his driver's license, and odor of alcohol all form a substantial basis for his conviction." 33 Kan. App. 2d at 945-46. If these facts were sufficient to support a finding beyond a reasonable doubt that Huff was under the influence of alcohol to an extent that he was incapable of operating a motor vehicle safely, the facts of our case, which are very similar, are clearly sufficient to support a probable cause determination, which is a significantly less stringent evidentiary standard.

Herman argues some of the district court's findings are contradicted by the video. We do not find this to be so. The findings were primarily based on Officer Garrett's testimony, and the video is not conclusive. The findings by the district court are amply supported by substantial competent evidence. Herman's arguments concerning the evidence essentially asks us to reweigh the evidence, which is not our function. See *State v. Garza,* 295 Kan. 326, 335, 286 P.3d 554 (2012); *State v. Ackward,* 281 Kan. 2, 8, 128 P.3d 382 (2006).

Finally, Herman finds fault with the district court's ruling for its failure to point to several positive factors in her favor, citing *State v. Edgar,* 296 Kan. 513, 525, 294 P.3d 251 (2013). The actual dispositive holding of *Edgar* is:

"When a law enforcement officer instructs a driver that he or she has no right to refuse a preliminary breath test, the officer has contradicted the statutory pro-

visions that make a refusal to take the test a traffic infraction under K.S.A. 2010 Supp. 8-1012(d). This cannot be considered substantial compliance with the statute, nor does it equate to a failure to give the notice under K.S.A. 2010 Supp. 8-1012(c)." 296 Kan. 513, Syl. ¶ 4.

*Edgar*'s central issue was an appeal from "the denial of his motion to suppress because the investigating officer lacked reasonable articulable suspicion to request a PBT and his consent to the PBT was involuntary." 296 Kan. at 519. The *Edgar* opinion cites to *State v. Pollman*, 286 Kan. 881, 190 P.3d 234 (2008), for requiring that the "whole picture" must be taken into account when evaluating whether there is reasonable suspicion for requesting a PBT. 286 Kan. at 890." 296 Kan. at 525.

Herman translates this language to suggest she should have been given credit in the district court's findings for her ability to stop her vehicle, use of signals to change lanes, calm demeanor, and wearing high-heeled shoes. A construction of *Edgar* to require the district court to remark on every circumstance of normalcy would lead to lengthy district court findings. In our case, Herman's argument that such facts should be included suffers from a logical fallacy. Just because the inability to stop a vehicle properly, the failure to use turn signals to indicate a lane change, and dramatic mood swings are potential signs of intoxication; the absence of those factors is not necessarily a sign of sobriety. Furthermore, the fact that Herman was wearing high heels might provide some mitigation in poor performance on field sobriety tests involving balance, if she had taken the tests and failed. But, the video of the stop clearly showed that Herman refused the tests without referring to her shoes as a reason for the refusal; she simply stated she lacked coordination. Under these circumstances, the district court was not required to specifically mention these facts in arriving at its suppression ruling. Herman's argument lacks persuasive force.

The facts supporting the suppression ruling were based on substantial competent evidence presented at the suppression hearing. The facts found by the district court were sufficient to provide probable cause to arrest Herman for DUI. The district court did not err in refusing to suppress the results from Herman's evidentiary breath test.

*Did the district court err in refusing to give retroactive effect to K.S.A. 2011 Supp. 8-1567(j)(3), limiting prior convictions to those occurring on or after July 1, 2001?*

Herman's last issue in this appeal concerns the district court's inclusion of her 1991 diversion in her criminal history for purposes of determining whether her current DUI conviction constitutes her first, second, third, or fourth DUI conviction.

Herman advocates for the application, to her benefit, of K.S.A. 2011 Supp. 8-1567(j)(3) which became effective July 1, 2012, and limits the prior convictions used to calculate the conviction level and the sentencing penalty for DUI convictions to those convictions occurring on or after July 1, 2001.

If the 2011 statutory amendment applies to Herman, the district court should not have counted her current DUI 1991 diversion and her current conviction would be considered her first.

We have earlier set forth the statutory provision in issue, but it is as follows: "(3) only convictions occurring on or after July 1, 2001, shall be taken into account when determining the sentence to be imposed for a first, second, third, fourth or subsequent offender." K.S.A. 2011 Supp. 8-1567(j)(3).

Herman raises multiple arguments. She contends the plain language of the statutory amendment indicated that the amendment should be applied prospectively to any sentencing occurring after the effective date of the amendment regardless of the date of the offense. Alternatively, she contends that the statutory amendment should be given retroactive application because it is procedural in nature, not substantive. She contends that the statutory amendment, taken in the context of the Act in which it was promulgated, demonstrates the Kansas Legislature's intent for the change to be applied retroactively. She contends that failing to apply the amendment retroactively will lead to an absurd result not intended by the legislature. She further contends that retroactive application of the amendment does not violate the Ex Post Facto Clause of the United States Constitution because it does not disadvantage her.

Herman acknowledges that most of these arguments have been resolved against her in previous decisions by this court. See *State*

*v. Reese*, 48 Kan. App. 2d 87, 283 P.3d 233 (2012), *rev. granted* October 1, 2013 (argued to the Supreme Court on January 23, 2014). As our Supreme Court's decision will ultimately decide this issue, judicial economy precludes it from being further discussed here.

We realize *Reese* is not of precedential value while pending on review by our Supreme Court, but we are in agreement with and adopt all of its language and reasoning along with numerous other Court of Appeals decisions reaching the same result. As such, we hold that K.S.A. 2011 Supp. 8-1567(j)(3) cannot be applied retroactively and applies only to DUI violations committed on or after the 2011 effective date of the statutory amendment.

It does not apply to Herman's 1991 diversion which was correctly counted as a prior conviction in determining the conviction level and sentencing penalty for her DUI conviction.

In summary, we have jurisdiction over Herman's cross-appeal but affirm the district court on the two issues she raises.

Appeal dismissed and cross-appeal affirmed.