NOT DESIGNATED FOR PUBLICATION

No. 111,239

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH BRIAN WITT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed December 11, 2015. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., LEBEN and BRUNS, JJ.

*Per Curiam*: On June 25, 2010, sometime after midnight, Kenneth Witt and Brandon Padgett entered Ronnie Dick's house; Dick and a friend, JC Turner, were nearly asleep on the couch. According to Dick and Turner, Witt and Padgett both struck them with metal objects. According to Witt and Padgett, it was only Padgett who struck them. After leaving Dick's house, Witt and Padgett went to a gas station. While Witt was speaking to the clerk, Padgett stole a pack of beer. The two then drove away in Padgett's car.

A jury convicted Witt of theft and aggravated battery against Dick. Witt argues there was insufficient evidence to convict him. But when an appellate court looks at the sufficiency of evidence on appeal, we must look at the evidence in the light most favorable to the State since the jury ruled in its favor. Here, taken in that light, sufficient evidence supports the convictions and reflects the jury's decision that Witt and Padgett's version of the events was not credible.

The State also raises an issue regarding Witt's sentence. But the State did not file a cross-appeal to raise the sentence as an issue on appeal, so we lack jurisdiction to consider the claim.

We affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Ronnie Dick, his wife, and two children were neighbors with Kenneth Witt. Dick considered Witt a friend and saw him regularly around the neighborhood. In the summer of 2010, Witt was down on his luck—his wife had left him, and he was homeless, jobless, and struggling with alcoholism.

On the afternoon and evening of June 24, 2010, Ronnie Dick was hosting a barbeque with some family and friends, including his friend JC Turner. Sometime that afternoon, Witt got a ride to Dick's house with Brandon Padgett. According to Dick, Witt asked if he could come over and drink, but Dick told him no because "it wasn't that type of party." Witt and Padgett said that they stopped by Dick's house to see if they could get some marijuana from him.

In the evening, Turner's parents took Turner to his house to grab a few things to take back to Dick's place. While there, they saw Witt in the house. Turner said that he

had allowed Witt to stay at his place the night before but hadn't given him permission to stay another night. Witt said he had arranged to pay rent and stay with Turner if he could come up with the money by July 1.

Turner and his parents returned to Dick's house and told Dick about Witt. Around 10 p.m., Dick, Turner, Turner's parents, and one or two other friends returned to Turner's house. Dick testified that he simply wanted to talk to Witt and get him out of there because he was very drunk and Dick didn't want the Turners to call the police to evict Witt. Dick, Turner, and Turner's parents reported that there was no physical altercation at this time. But Witt testified that Dick screamed at him to get out, grabbed him by his shirt, and kicked him in the back of the leg. However prompted, Witt eventually left, while Dick and Turner returned to Dick's house to watch a movie.

Dick and Turner testified that they were nearly asleep on the couch when Witt came into Dick's house sometime after midnight, screaming that he was going to kill Dick. Dick and Turner recognized Witt but didn't really know the second man who entered, later identified as Padgett. Dick said that Witt had black gloves on. Dick stated that Witt stabbed him in his abdomen with a paring knife before he was able to kick the knife away. According to Dick, Witt then pulled out a cylindrical metal baton from behind his back and began striking Dick in the face. Turner also reported seeing Witt holding a metal baton. Dick reported that he eventually grabbed the object away from Witt and threw it across the room. In the process, he injured his hand, splitting open the skin between his middle fingers. Dick then began punching Witt.

According to Dick, Padgett then began striking him with another metal object on the back of his head, shoulder, and leg. Turner tried to keep Padgett away from Dick, but Padgett struck him in the head a few times, causing Turner to have a seizure. Dick claimed that Witt then held him down while Padgett continued to beat him. During the beating, Dick lost consciousness. Eventually, Padgett and Witt left.

3

Witt and Padgett provided a different version of events. Witt said that after Dick kicked him out of Turner's house, he went over to Padgett's. Witt testified that he wanted to talk to Dick and smooth things over and asked Padgett for a ride over to Dick's house. He wanted Padgett as "backup" and asked Padgett to wait outside in case Dick and his friends got aggressive. Witt noticed that Padgett had grabbed two pairs of gloves, a metal bar, and a tire iron. According to Witt, Dick's wife let him in, and then Witt asked Dick "what the hell was that all about[?]" Dick allegedly replied, "Sick 'em boy" to summon one of his pit bulls, although Witt admitted he never saw a dog. Dick reportedly kicked Witt and grabbed him by the shirt to pull him into Dick's chest. At this point, according to Witt, Padgett started hitting Dick, and Witt told him to stop. Witt testified that once he realized Padgett was hitting Dick, he got up and left.

Padgett accepted a plea deal from the State but testified on behalf of Witt. He admitted using alcohol and methamphetamine around the time of the attack. Padgett said that Witt didn't ask him to hurt anyone but that he "wanted to show them guys how tough I thought they were for picking on my old drunk friend." He took a hat, a pair of gloves, a tire iron, and a barbell with him to Dick's house. Padgett said that when Witt saw him with the barbell, Witt said that he wouldn't need it. Padgett testified that he entered the house with the tire iron in his left hand and the barbell in his right. He then proceeded to beat up both Turner and Dick, using the barbell on Turner and then the tire iron on Dick. According to Padgett, he dropped the barbell at some point. Padgett testified that once Dick asked him to stop, he and Witt left the house.

After leaving Dick's house, Witt and Padgett went to a gas station to get alcohol. Witt entered first and went to speak to the store clerk about the store's nacho machine. Padgett entered less than a minute later and headed to the back of the store. While Witt spoke to the clerk, Padgett stole a 30-can pack of beer from the cooler and left. Witt left

4

about a minute later without purchasing anything and got in the car with Padgett. According to the clerk, Witt gave the clerk the middle finger before they drove away.

In the meantime, officers arrived at Dick's house around 1:30 a.m., following 911 calls from his wife and daughter. Dick's wife told officers that she had heard a knock on the door and that when she opened it, Witt and Padgett had forced their way in; she then left the house with her son. On the scene, Turner told police that Witt and another unidentified male had struck him and Dick, but Dick said only that the unknown male had struck him and didn't say whether Witt had had a weapon. Dick's later statement to police detectives after receiving medical treatment was consistent with his account at trial—that Witt had struck him with a baton-like object but that he had been able to disarm Witt, injuring his hand in the process.

The police later recovered a metal barbell under the couch at Dick's house and two pairs of gloves and a tire iron at Padgett's house. Testing on one of the gloves revealed DNA similar to the profiles of Padgett, Witt, and Dick. DNA that may have belonged to Dick was found on the tire iron, and testing of the barbell revealed DNA that may have belonged to Turner.

Police found Witt at Padgett's house and brought him in for questioning. He initially denied having gone anywhere after going to Padgett's place at 5 p.m., but after being confronted with evidence, he admitted having gone to the gas station. At one point, the officer left Witt alone, and Witt was recorded saying, "I'm busted." Witt later testified that what he meant was that he didn't want to tell on Padgett and thought he was going to have to accept responsibility for everything.

As a result of the beating, Dick suffered from a fractured skull, multiple cuts on his face and scalp, bruising on his forearms, legs, and shoulders, and a small cut in his

5

abdomen. He had to have stitches on the front of his face and had to have two teeth replaced.

Witt was charged with aggravated burglary, aggravated battery of Dick, aggravated battery of Turner, and theft. The jury convicted him of theft and one count of aggravated battery (for the beating of Dick).

At sentencing, held February 6, 2012, the district court determined that Witt had an extensive criminal history. Based on the criminal history and the Kansas sentencing guidelines, the court sentenced Witt to 172 months in prison for the aggravated-battery conviction and 12 months in jail for the theft conviction, to run concurrently. The court postponed its determination of restitution for 30 days, but the restitution hearing wasn't held until November 2013. Witt then appealed to our court.

While the appeal was pending, our court asked the district court to determine whether Witt should be resentenced based on the ruling in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014. Under *Murdock*, some of Witt's past convictions were no longer considered for sentencing purposes. On November 10, 2014, the district court entered a new sentence of 64 months for the aggravated-battery conviction; the court again entered a 12-month jail term for the theft and again made the sentences concurrent to one another.

ANALYSIS

I. *The Convictions for Aggravated Battery and Theft Were Supported by Sufficient Evidence.*

Witt's appeal is based on his claim that the jury had insufficient evidence to convict him of aggravated battery and theft. In regard to the aggravated-battery charge,

6

Witt argues that a rational jury would have rejected Dick and Turner's version of the events and would have accepted Padgett's testimony when he took full responsibility for the crime. As to the theft charge, Witt argues that a rational jury would have believed Padgett's admission that he alone took the beer and could not have found Witt guilty of theft. The State contends that the jury had sufficient evidence to convict Witt of aggravated battery and theft.

Sufficiency of the evidence is challenged on appeal only after the factfinder—here, the jury—has determined the facts in the State's favor and convicted the defendant of a charge. Since the jury is charged with determining the facts, we must look at the evidence on appeal in the light most favorable to the State. In that light, we then determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Bolze-Sann*, 302 Kan. 198, 203, 352 P.3d 511 (2015). We do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicts in the evidence. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

Here, the jury was properly instructed that to convict Witt of aggravated battery, the State had to prove that Witt intentionally caused Dick great bodily harm or disfigurement. See K.S.A. 2014 Supp. 21-5413(b)(1)(A). It was also instructed to consider the lesser-included offense of aggravated battery, which only required that the State prove that Witt intentionally caused bodily harm to Dick with a deadly weapon, such as the knife, metal bar, or tire iron. See K.S.A. 2014 Supp. 21-5413(b)(1)(B). The jury ultimately convicted Witt of the higher charge of aggravated battery.

Witt argues that a rational jury would have discredited Dick and Turner's testimony, given Turner's history of seizures and schizophrenia and that Dick "could have easily mistaken Mr. Witt for Mr. Padgett." (According to Witt, a rational jury would have accepted Padgett's and his testimony that Padgett was the only attacker.

7

But when we view the evidence in the light most favorable to the State, it is more than sufficient for a rational factfinder to have found Witt guilty of aggravated battery beyond a reasonable doubt. Dick testified that Witt struck him in the face two to three times with a metal baton, which resulted in Dick needing several stitches near his mouth and chin and having to replace two cracked teeth. He testified to getting the metal object away from Witt, resulting in injury to his hand, and throwing it across the room, where it was later recovered by police. Dick also described that Witt was wearing gloves, which was consistent with DNA evidence found on one of the pairs of gloves. And the jury heard Witt say "I'm busted" during a recorded police interview. A guilty verdict will only be reversed in the "rare cases in which trial testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt." *State v. Ramirez*, 50 Kan. App. 2d 922, 936, 334 P.3d 324 (2014).

In finding Witt guilty, the jury evidently didn't find Witt and Padgett's testimony credible. The jury wasn't bound to accept any one witness' version of the facts. *State v. Kettler*, 299 Kan. 448, 471-72, 325 P.3d 1075 (2014). In fact, the jury had been instructed—also properly—to consider Padgett's testimony "with caution" because he was involved in the crime. See *State v. Llamas*, 298 Kan. 246, 262-65, 311 P.3d 399 (2013). In addition, the jury was informed of Dick's memory problems since the beating and Turner's history of seizures and schizophrenia. Witt essentially asks this court to re-assess witness credibility or resolve conflicts in the evidence. But that is the duty of the jury, not the reviewing court. Rational jurors could have believed Dick's version of events and found Witt guilty of aggravated battery.

Witt also challenges the sufficiency of the evidence for his theft conviction. He argues that the State failed to prove that he had participated in or assisted Padgett in stealing the beer. At trial, the State alleged that Witt was guilty of theft because he had helped steal the beer by distracting the store clerk. The jury was properly instructed that a person who intentionally aids or assists another in committing a crime "is criminally

responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime." See K.S.A. 2014 Supp. 21-5210; *State v. Green*, 237 Kan. 146, 149, 697 P.2d 1305 (1985). In other words, if Witt assisted or aided Padgett in stealing the beer, he would face the same legal consequences as if he actually took the beer himself.

To convict a defendant based on aiding or assisting another, simply being around or associating with the person who committed the crime is not enough. *Williams*, 299 Kan. 509, Syl. ¶ 4. Rather, the State must show that the defendant knowingly associated with or participated in such a way that would facilitate the crime. 299 Kan. 509, Syl. ¶ 4. But intent to aid or assist may be inferred from circumstantial evidence. *Llamas*, 298 Kan. at 254. In finding a defendant guilty, "the jury is presumed to have believed the State's evidence and to have drawn from it all reasonable inferences favorable to the State." *Kettler*, 299 Kan. at 472.

Here, rational jurors could have reasonably inferred that Witt assisted Padgett in the theft by distracting the store employee. Witt knew that they were going to stop to get alcohol. Witt went into the store first and began asking the clerk questions about the store's nacho machine; because the clerk was speaking with Witt, his back was turned to the door. Less than a minute later, Padgett entered the store and headed back to the cooler to get the beer. A minute or so after Padgett left the store with the beer, Witt left the store without buying anything and joined Padgett in the car. And the store clerk testified that Witt gave the clerk the middle finger as the two drove away. The evidence was sufficient to find Witt guilty of theft because he assisted Padgett in stealing the beer.

II. *We Do Not Have Jurisdiction to Consider the State's Challenge to Witt's Sentence*.

In its brief on appeal, the State asks that we send the case back to the district court with directions that Witt be resentenced to the original 172-month sentence on his aggravated-battery conviction. We will briefly explain how this issue arose.

Witt was initially sentenced in February 2012 to 172 months in prison for the aggravated-battery conviction and 12 months in jail for the theft conviction, to run concurrently. Witt could not immediately appeal, however, because the district court didn't resolve restitution issues until November 2013. Witt then filed a timely appeal. See *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014) (noting that until restitution is decided, a defendant's sentence is not final and not appealable).

At the time of Witt's sentencing under the Kansas sentencing guidelines, the district court fully considered all of his past convictions. In May 2014, however, the Kansas Supreme Court issued its opinion in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014. *Murdock* changed how pre-1993 out-of-state convictions would be counted in determining the criminal history for sentencing of a current conviction, resulting in lower criminal-history scores and lower sentences for some defendants. 299 Kan. at 319.

Witt filed his brief on appeal on October 8, 2014. In it, in addition to addressing the sufficiency of the evidence, he also argued that he should be resentenced under *Murdock*. On October 20, 2014, our court remanded the case to the district court to determine whether *Murdock* applied. After applying *Murdock*, the district court resentenced Witt to 64 months for the aggravated-battery conviction.

The State filed its brief on June 29, 2015. By that time, the Kansas Legislature had passed a new statute—to apply retroactively—that aimed to overrule *Murdock*'s holding.

10

The State argued that, given these changes, Witt's "corrected" sentence was now illegal and requested the case be remanded to the district court for resentencing. Then in August 2015, the Kansas Supreme Court overruled *Murdock* in *State v. Keel*, 302 Kan. ___, 357 P.3d 251 (2015).

But an appellate court has a duty to question jurisdiction on its own initiative and must dismiss the appeal if it finds it lacks jurisdiction. *State v. J.D.H.*, 48 Kan. App. 2d 454, 458, 294 P.3d 343, *rev. denied* 297 Kan. 1251 (2013). Because the State never filed a notice of appeal or cross-appeal, its request that we further review Witt's sentence is not properly before this court.

The right to appeal is entirely statutory and is not included in either the United States or Kansas Constitutions. *State v. Mburu*, 51 Kan. App. 2d 266, 269, 346 P.3d 1086, *rev. denied* 302 Kan. ___ (2015). Generally, an appellate court has jurisdiction to consider an appeal only if the appeal follows the procedure prescribed by statutes. *State v. Plummer*, 295 Kan. 156, 160-61, 283 P.3d 202 (2012).

K.S.A. 2014 Supp. 60-2103(h) governs Kansas appellate procedure regarding cross-appeals in both civil and criminal cases: "When notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which such appellee complains, the appellee shall . . . give notice of such appellee's cross-appeal." *State v. Herman*, 50 Kan. App. 2d 316, Syl. ¶¶ 5-8, 324 P.3d 1134 (2014). If an appellee fails to file a cross-appeal to adverse rulings, then those rulings are not properly before the appellate court and may not be considered. *Cooke v. Gillespie*, 285 Kan. 748, Syl. ¶ 2, 176 P.3d 144 (2008).

Here, there is no indication in the record that the State filed a notice of appeal or cross-appeal addressing Witt's resentencing. We therefore lack jurisdiction to consider the State's claim that Witt's sentence is illegal and must dismiss it. See *State v. Unruh*,

281 Kan. 520, 524-26, 133 P.3d 35 (2006) (holding that the State's failure to appeal from defendant's resentencing meant the Court of Appeals lacked jurisdiction to consider any issues related to it).

We affirm the district court's judgment and dismiss the State's attempt to challenge Witt's revised sentence.